THEODORE MURNICK AND MAXINE MURNICK, HIS WIFE,
PLAINTIFFS-APPELLANTS, v. CITY OF ASBURY PARK,
DEFENDANT-RESPONDENT,

and

ATTORNEY GENERAL OF NEW JERSEY,
INTERVENOR-RESPONDENT.

Argued December 12, 1983—Decided February 27, 1984.

*Carl G. Weisenfeld* argued the cause for appellants (*Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney,* attorneys; *Carl*

*G. Weisenfeld, Todd M. Sahner* and *Paul H. Brownstein*, of counsel and on the briefs).

*Edward G. Rosenblum* argued the cause for respondent (*Rosenblum & Rosenblum*, attorneys).

*Harry Haushalter*, Deputy Attorney General, argued the cause for intervenor-respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

POLLOCK, J.

At issue on this appeal is the constitutionality of *N.J.S.A.* 54:1–35a and *N.J.S.A.* 54:2–40.4 (commonly known as "chapter 123") under art. VIII, § 1, para. 1(a) of the New Jersey Constitution, which mandates that real property be assessed according to a uniform standard of value. Resolution of that issue involves determining whether chapter 123 provides the exclusive form of relief from a claim of property tax discrimination.

The Tax Court found that chapter 123 was not exclusive, and that the taxpayers, Theodore and Maxine Murnick, were entitled to tax relief. 2 *N.J.Tax* 168 (1981). In reversing, the Appellate Division found chapter 123 to provide the only basis for relief in a tax discrimination case. 187 *N.J.Super.* 455, 459–61 (1982).

The taxpayers appealed as of right, Appellate Division's interpretation of chapter 123 would violate the constitutional mandate. *R.* 2:2–1(a). We conclude that the Appellate Divison erred in interpreting chapter 123 as providing the sole remedy in all cases. In egregious cases of discrimination, a taxpayer retains a constitutional right to relief. Except in those cases, which we expect will be rare, chapter 123 establishes both the right to and measure of relief. We further conclude that the Murnicks have a right to show that the Director of the Division of Taxation (Director) should have excluded certain sales from the data used in calculating the average ratio for the City of Asbury Park.

Consequently, we reverse in part the judgment of the Appellate Division and remand the matter to the Tax Court. On remand, the plaintiffs may seek to exclude the challenged sales from the Director's table.

I

This case concerns the property tax assessment of a 15-story apartment building in Asbury Park and the inequality of assessments in that city. For the years 1977, 1978, and 1979, the property was assessed at $1,974,000, allocated $74,000 for land and $1,900,000 for improvements. The Murnicks objected to the assessment, claiming it was discriminatory. Thereafter, the Monmouth County Board of Taxation affirmed the assessments, and the Murnicks appealed to the Tax Court. Originally the 1977 and 1978 appeals were made to the former Division of Tax Appeals, which transferred the cases to the Tax Court upon its creation in 1979. *N.J.S.A.* 2A:3A–1.

In the Tax Court, the parties agreed on the assessment-true value ratio for 1977 (72.51%) and 1979 (63.09%), but disagreed on the ratio for 1978. The Tax Court ruled that no common level of assessment existed in Asbury Park during 1978, a ruling not questioned on this appeal. In fact, Asbury Park had not conducted a revaluation during the fifteen years preceding the tax years in question, and no common level of assessment existed for those years.

Although the City contended that the taxpayers' right to relief was restricted to chapter 123, the taxpayers urged that the court could apply either the chapter 123 ratio or the Director's average ratio used by the State to distribute school aid, *N.J.S.A.* 54:1–35.1. Chapter 123 provides a statutory formula for determining whether an assessment is discriminatory. Under the statute, the test is whether the ratio of assessed to true value of the property in question exceeds by 15% the average ratio for the district. When a taxpayer is entitled to relief, the assessment is adjusted by applying the district average ratio to

the true value of the property. For 1978, the average ratio for Asbury Park, as determined under chapter 123, was 80%, and the assessed-true value ratio for the subject property was 91%, which was within the common level range of 68–92%. Hence, the Tax Court found that taxpayers are not entitled to relief under chapter 123.

Nonetheless, the Tax Court continued:

I find that in the context of the present matter, Chapter 123 fails to provide an adequate and equitable remedy as contemplated by the Supreme Court of New Jersey in *In re Appeal of Kents, Inc.* [34 *N.J.* 21 (1961)], *supra.* This is especially so in light of the fact that defendant does not oppose a ratio application but rather seeks only to afford the taxing district a higher ratio in order to obtain a greater assessment for the tax year of 1978. Based on these circumstances, I find Chapter 123 inadequate and will apply the Director's average ratio for 1978 to relieve the taxpayers from an inequitable assessment. [2 *N.J.Tax* at 191].

Using the Director's average ratio, the Tax Court determined the effective tax rate and recalculated the 1978 true value of the property, concluding:

The value as recomputed produces a ratio of assessment to true value of 88.3%. Compared to the director's average ratio for 1978 which is 73.42%, the difference is 20.27% (88.3 − 73.42 = 14.88 ÷ 73.42 = 20.27%) which I find to be a substantial difference. Therefore, relief should be awarded pursuant to *In re Appeal of Kents, Inc., supra.* [*Id.* at 192].

Consequently, the Tax Court entered judgment reducing the assessments to $1,596,900 for 1977, $1,641,600 for 1978, and $1,522,000 for 1979.

On appeal, Asbury Park urged that the Legislature intended chapter 123 to be exclusive and that the Tax Court should not have reduced the 1978 assessment. The City further argued that the stipulated 1979 ratio (63.09%) was invalid because it did not comply with chapter 123. The Appellate Division agreed, held that chapter 123 was exclusive, and reversed the judgment reducing the 1978 assessment. For reasons set forth more fully below, the Appellate Division also vacated and remanded the judgment on the 1979 assessment. The court dismissed the 1977 appeal, and that matter is not before us.

As for the 1979 assessment, the Appellate Division wrote:

We next turn to the determination with regard to the 1979 tax year. It is conceded that the city stipulated to the application of an average ratio of 63.09%. The city now insists that the chapter 123 ratio would have been greater. The stipulated ratio would entitle the taxpayer to relief since its original assessment to true value ratio exceeded 63.09% by more than 15%. Defendant does not dispute that the stipulation was made. Rather, it challenges the right of the court to accept such a stipulation.

We recognize that counsel for the city requested application of the 63.09% ratio. However, the record shows that he did so because he used the Director's figures for the wrong year. He failed to realize that chapter 123 requires use of the ratio for the pretax year. The ratio requested and stipulated was based on the Director's 1979 study, whereas the statute would have required use of the ratio based upon his 1978 study.

The Director's weighted ratio for the preceding tax year, mandated for use by chapter 123 for the 1979 tax year, was fixed and available. The use of any other ratio thus violates the statute and should be corrected under the plain error rule. *R.* 2:10-2. Hence, we vacate the judgment for the 1979 tax year and remand the tax appeal for that year for reconsideration. The applicable 'common level range' must be determined based upon the Director's weighted average for the previous tax year. The taxpayers contend that they relied on the stipulation and therefore did not attempt to attack the director's ratio calculations. On remand, the chapter 123 ratio applicable for the 1979 tax year must be determined and the tax refund, if any, must be adjusted accordingly. If the taxpayers' ratio does not meet the chapter 123 threshold, they should be afforded the opportunity to demonstrate error in the director's calculations if they so desire. [187 *N.J.Super.* at 462–63 (footnote omitted)].

We agree with the remand of the 1979 assessment to the Tax Court. The issue concerning the 1978 assessment is more complex and requires some exposition of the right of taxpayers to equality of treatment in shouldering their fair share of the tax burden.

II

 Equality of treatment in sharing the duty to pay real estate taxes is a constitutional right. The New Jersey Constitution, art. VIII, § 1, para. 1, expressly provides that real estate "shall be assessed according to the same standard of value." If the assessment ratio applied to a parcel substantially exceeds the assessment ratio applied generally in a taxing district, the taxpayer has a right to relief. *Piscataway Assocs., Inc. v. Township of Piscataway,* 73 *N.J.* 546, 553–54 (1977); *In re Appeal of Kents 2124 Atlantic Ave., Inc.,* 34 *N.J.* 21, 33–34

(1961). Not every deviation, however, is of constitutional dimension. Mathematical precision is not required. *Kents, supra,* 34 *N.J.* at 32. Substantial, although imperfect, justice satisfies the constitutional mandate. *Siegal v. Newark,* 38 *N.J.* 57, 61 (1962).

In this technical area, an evaluation of equality depends on statistical analysis and a comparison of the assessments of properties within a taxing district. Underlying that evaluation is the development of a fair method of comparing the assessed value with the true value of the property. Preliminarily, by dividing the assessed value by the true value, one derives an assessment-value ratio.

If a taxing district assesses property at true value or some percentage of true value, often described as a "common level of assessment," a determination of discrimination is comparatively simple. A comparison of the actual assessment with the common level of assessment discloses whether the tax burden on a particular lot exceeds that generally allocated to real property in the taxing district.

Before the enactment of chapter 123, proof of discrimination was more difficult in municipalities where no revaluation had occurred for many years and no common level of assessment existed. In those circumstances, a taxpayer seeking to prove discrimination was obliged to prove (1) that real property in the municipality was assessed generally at less than true value; (2) the common level of assessment; and (3) the true value of the subject property. *Continental Paper Co. v. Ridgefield Park,* 122 *N.J.Super.* 446, 450 (App.Div.1973). This was an expensive undertaking, often one too costly for all but wealthy and sophisticated taxpayers. *Cf. Rudd v. Cranford Tp.,* 4 *N.J.Tax* 236, 247 (Tax Ct.1982) (prior to chapter 123, parties required extensive statistical studies by experts to prove their case).

Recognizing the special problems confronting taxpayers in a taxing district with no common level of assessment, this Court held that where no common level was ascertainable, the Di-

rector's average school aid ratio could be used as a presumptive common level. *Kents, supra,* 34 *N.J.* at 31. Writing for the Court, Chief Justice Weintraub noted the inherent imperfections of that measure, but maintained that tax "relief should not be denied merely because the result lacks absolute precision." *Id.* at 32. In *Kents,* we expressly invited legislative action to provide guidelines for resolving all assessment discrimination claims. *Id.* at 33. The Legislature responded several years later by enacting chapter 123. See *Diament v. Fort Lee,* 3 *N.J.Tax* 70, 79–80 (Tax Ct.1981).

Chapter 123 reduces the taxpayer's burden of proof of the true value of the property. That is, chapter 123 eliminates the necessity of proving that the property was assessed generally at less than true value and of proving the common level of assessment. The statute achieves this result by providing definitions of "average ratio" and "common level range" of assessment.

Effective in 1978, the statute declares that the "common level range" is a "range which is plus or minus 15% of the average ratio...." *N.J.S.A.* 54:1–35a(b). The "average ratio" is the ratio determined by the Director from the latest study compiled for the purposes of *N.J.S.A.* 54:1–35.1 as of October 1 of the year preceding the tax year. *N.J.S.A.* 54:1–35a(a). In compiling the study, the Director considers sales and assessed values within the taxing district, exclusive of twenty-seven categories of deed transactions. *N.J.A.C.* 18:12–1.1(a)25. Although other definitions are conceivable, those contained in chapter 123 provide a workable and fair formula for relief from tax discrimination.

As initially enacted, the average ratio for chapter 123 was "the unweighted unclassified arithmetic average as of October 1 of the year preceding the tax year ...." *L.*1973, *c.* 123, § 1(a). By comparison, the school aid ratio is weighted and classified. *N.J.S.A.* 54:1–35.1. Furthermore, the definition of the average ratio in chapter 123 changed in 1979 to a weighted, classified average.

The terms "unweighted" and "unclassified," like "weighted" and "classified," are not defined in either the relevant statutes or administrative regulations. Speaking generally, an unweighted ratio weighs the assessment ratio of each parcel equally, but a weighted ratio gives greater weight to the assessment of parcels that are sold for higher prices. An unclassified ratio does not distinguish between different kinds of property, but a classified ratio categorizes property by group as, for example, vacant, residential, farm, or other (including commercial and industrial) property and calculates the ratio on that basis. *See Gaynes v. Edison Tp.*, 2 · *N.J.Tax* 500, 507–08 (App.Div.1980).

On this appeal, the main point of disagreement is whether chapter 123 provides the exclusive avenue of tax relief; and, if so, whether the statute is constitutional. Although the Tax Court found that it was unnecessary to determine if chapter 123 was exclusive, 2 *N.J.Tax* at 178, that court subsequently found that chapter 123 failed to provide "an adequate remedy." *Id.* at 191. Consequently, the Tax Court substituted the school aid ratio, *N.J.S.A.* 54:1–35.1, for the chapter 123 ratio.

In reversing, the Appellate Division wrote:

We conclude that the Legislature mandated the use of chapter 123 as an exclusive remedy subject to the exceptions contained therein. *N.J.S.A.* 54:2–40.-4(a) provides:

> *Whenever* the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it *shall* enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided. [Emphasis supplied] . . .

We conclude that the words 'whenever' and 'shall' denote a mandatory provision.

[187 *N.J.Super.* at 459–60 (footnote omitted)].

The Appellate Division found nothing in the legislative history that conflicted with its interpretation that chapter 123 was exclusive, a finding it believed would lend stability to assessments. *Id.* at 461. Although we agree with the importance of stability in tax assessments, that goal may not override the

constitutional right of a taxpayer to substantially equal treatment at the hands of a tax assessor.

■ As a matter of statutory construction, we disagree with the Appellate Division's interpretation of *N.J.S.A.* 54:2–40.4(a). The words "whenever" and "shall" do not signify that the statute provides the sole discrimination remedy in satisfaction of a taxpayer's constitutional right to relief. Rather, "whenever" and "shall" merely connote that a taxpayer, having invoked the statute, must satisfy the statutory requirement to establish a right to relief.

■ We believe the more tenable reading of the statute is that chapter 123 establishes a rebuttable presumption of the common level assessment. *See Red Devil, Inc. v. Union Tp.,* 5 *N.J.Tax* 1, 14 (Tax Ct.1982); *Jefferson House Investment Co. v. Chatham,* 4 *N.J.Tax* 669, 682–84 (Tax Ct.1982); *Rudd v. Cranford Tp., supra,* 4 *N.J.Tax* at 248; *525 Realty Holding Co. v. Hasbrouck Heights,* 3 *N.J.Tax* 206, 213 (Tax Ct.1981); *Diament v. Fort Lee, supra,* 3 *N.J.Tax* at 77–84; *Devonshire Develop. Assoc. v. Hackensack,* 2 *N.J.Tax* 392, 404–05 (Tax Ct.1981). Both the title of the act and its legislative history so indicate. The title of *L.*1973, *c.* 123 is: "An act concerning tax appeals, establishing certain rebuttable presumptions relating to cases of alleged discrimination, and amending *R.S.* 54:3–22 and *R.S.* 54:4–62 and section 15 of chapter 161 of the laws of 1946." The phrase "rebuttable presumptions" in the title appears to refer to the use of the average ratio as presumptive proof of the common level range. Further support of this interpretation is gleaned from the legislative histories of amendments to chapter 123. Senate, County and Municipal Government Committee, *Statement to Assembly No. 1492* (Dec. 4, 1978); Release from the Office of the Governor (March 21, 1979) (referring to the average ratio in A–1492 as "establishing rebuttal [sic] presumption"). Furthermore, our interpretation is consistent with the underlying purpose of the act, which was to relieve the taxpay-

er's burden of proof. *Devonshire Develop. Assocs. v. Hacken-. sack, supra,* 2 *N.J.Tax* at 398–99.

■ Nonetheless, to the extent that a taxpayer relies on a presumptive ratio to establish a common level of assessment, we find that the Legislature intended to restrict the taxpayer to the Director's average ratio determined under chapter 123. In the absence of additional proof, a taxpayer may not substitute another statutory ratio, such as that computed under *N.J.S.A.* 54:1–35.1. To overcome the presumption that the chapter 123 ratio reflects the common level, the taxpayer must establish that application of the ratio would be "virtually confiscatory." *525 Realty Holding Co. v. Hasbrouck Heights, supra,* 3 *N.J.Tax* at 216. As a practical matter, the presumption created by chapter 123 is so strong that it will be conclusive in all but the most egregious cases. *Jefferson House Investment Co. v. Chatham, supra,* 4 *N.J.Tax* at 682–84.

■ Here, however, the taxpayer adduced no evidence that the chapter 123 ratio was confiscatory. Without such proof, we agree with the Appellate Division, 187 *N.J.Super.* at 462, that the Tax Court should not have automatically substituted the school aid ratio for the chapter 123 ratio. In this case, we need not set the outer limits of the constitutional right. It is sufficient to note that a taxpayer's right to relief should be determined in accordance with chapter 123 in all but the most extreme or severe circumstances. To that limited extent, chapter 123 is not exclusive. Thus construed, we have no doubt that the statute is constitutional.

### III

Before us, the taxpayers assert that the Director used incorrect data in calculating the ratio. According to the taxpayers, certain categories of sales excluded by administrative regulation from the Director's study, *N.J.A.C.* 18:12–1.1, were included in the study. They have identified within the study six sales that fall outside the acceptable categories: one sale that occurred

before the sampling period, *N.J.A.C.* 18:12–1.1(a)(5); one sale conveying only a portion of the assessed property, *N.J.A.C.* 18:12–1.1(a)(6); one sale that encompasses a severed portion of an assessed unit, *N.J.A.C.* 18:12–1.1(a)(6); and three sales by executors, *N.J.A.C.* 18:12–1.1(a)(10). Exclusion of those sales from the 1978 study, the taxpayers assert, would result in an assessment ratio of 74% and entitle the taxpayers to relief under chapter 123.

■ If the Director has included incorrect information that substantially skews the ratio, a taxpayer has a right to bring a timely application to correct the deviation. *Weyerhaeuser Co. v. Borough of Closter,* 190 *N.J.Super.* 528, 539 (App.Div.1983). Generally, as here, the assertion of a claim in a tax appeal is the proper procedure. In this case, we need not decide whether or under what circumstances a prior challenge to a ratio will preclude a challenge in a tax appeal.

■ Another problem in the present proceeding is the failure of the taxpayers to challenge the ratio before the Tax Court. As a general rule, litigants do not get two bites at the same apple. In this respect, tax appeals are no different from any other case.

We conclude, however, that the taxpayers should have the right to challenge the table on remand. Initially, they point out that chapter 123 became effective in the tax year in question, 1978, and that the unweighted ratio, which gave rise to the appeal, was in effect for that year only. The taxpayers also recite that the Tax Court, which replaced the former Division of Tax Appeals, came into being in the year in which the appeal was filed, 1979. Of somewhat greater weight is the fact that this is the first decision of our Court recognizing that a taxpayer may challenge an incorrectly computed chapter 123 ratio, and the Appellate Division had not recognized that right until 1983. *Weyerhaeuser, supra,* 190 *N.J.Super.* at 539. Also, at the request of the municipality, the 1979 assessment is subject to remand to the Tax Court for recomputation of the assessment

on the basis of the 1978 study. On balance, we believe that it is more equitable to accord the taxpayers the opportunity to establish that certain sales should have been excluded from the Director's 1978 study and that the exclusion of those sales justifies the grant of relief.

The judgment of the Appellate Division is reversed in part and affirmed in part, and the matter is remanded to the Tax Court.

*For reversal in part; affirmance in part and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARI-BALDI—7.

*Opposed*—None.