622 A.2d 1350

1530 OWNERS CORP., PLAINTIFF–APPELLANT, v. BOROUGH
OF FORT LEE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1993—Decided April 13, 1993.

Before Judges BRODY, LANDAU and THOMAS.

*Carl G. Weisenfeld* argued the cause for appellant (*Hannoch Weisman,* attorneys; *Mr. Weisenfeld,* of counsel and on the brief; *Robert H. Solomon,* on the brief).

*George G. Frino* argued the cause for respondent Borough of Fort Lee.

*Julian F. Gorelli*, Deputy Attorney General, argued the cause for respondent-intervenor Director, Division of Taxation (*Frederick P. DeVesa*, Acting Attorney General, attorney; *Mr. Gorelli*, on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Plaintiff, the owner of a 483–unit high-rise cooperative apartment building in the Borough of Fort Lee (Borough), appeals from a Tax Court judgment setting the property's assessment for the 1987 tax year. The trial judge equated the property's value with the total value of the cooperative's shares, using as comparables the prices for which shares were sold to outsiders within about a year before and after the assessment date. After allowing discounts for senior citizen tenants and for tenants protected by the anti-eviction statute, the judge found the true value of the property to be $121,799,169. Based on that value, the $78,000,000 assessment levied by the Borough exceeded the common level range. The judge therefore applied the 50.50% average ratio (chapter 123 ratio) established by the Director of the Division of Taxation (Director) and arrived at a total assessment of $61,508,600.[1] Plaintiff contends that the Director's chapter 123 ratio and the judge's evaluation of the shares were both too high.

■ A taxpayer may correct a chapter 123 ratio if it was based on "information that substantially skews the ratio." *Murnick v. Asbury Park*, 95 *N.J.* 452, 464, 471 *A.*2d 1196

---

[1] *L.* 1973, *c.* 123, contains provisions that require the Director to establish annually the "average ratio" of assessed to true value of property in each taxing district. On the appeal of an assessment, that ratio must be applied if the assessment was above or below the Director's average ratio by more than 15% ("common level range"). *N.J.S.A.* 54:1–35a; *N.J.S.A.* 54:51A–6a.

(1984). Plaintiff claims that the Borough's 1987 ratio includes fifty-five nonusable sales: two sales to affiliated entities and fifty-three insider sales to the tenants of a building that had been converted to a condominium. Excluding those sales would reduce the chapter 123 ratio from 50.50% to 44.91% thereby further reducing plaintiff's assessment. *N.J.A.C.* 18:12–1.1 identifies twenty-seven categories of sales that "should generally be excluded [when establishing a chapter 123 ratio]." However, a transaction in one of those categories "may be used if after full investigation it clearly appears that the transaction was a sale between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, and that it meets all other requisites of a usable sale." *N.J.A.C.* 18:12–1.1(b).

█ The first category of allegedly nonusable sales that plaintiff cites is defined in *N.J.A.C.* 18:12–1.1(a)3:

> Sales between a corporation and its stockholder, its subsidiary, its affiliate or another corporation whose stock is in the same ownership;

Plaintiff's expert testified that with respect to two sales used to establish the chapter 123 ratio he was told by people who owned all the stock of one of the seller corporations and half the stock of the other that at the time of the sale they also owned half of the stock of the purchaser corporation. Were these sales excluded, the chapter 123 ratio would have been reduced from 50.50% to 45.11%. The Borough did not refute that hearsay evidence. However, its expert testified that he was told by participants in both sales that nevertheless the selling prices were the result of arms-length negotiations. The trial judge rejected the challenge to the use of these sales because plaintiff did not "establish that these sales involved consideration that was arbitrarily set or reflected additional items beyond the sale of the real property in question."

The other category of allegedly nonusable sales, a catch-all category, is defined in *N.J.A.C.* 18:12–1.1(a)26:

> Sales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell;

In establishing the chapter 123 ratio the Director used fifty-three sales of residential units in a building after the building was converted to a condominium. The selling prices were the same as prices offered tenants in the Public Offering Statement. Plaintiff's expert testified that these sales must have been to insider tenants at prices below market value because there were sales of other units in the building at higher prices. Were these fifty-three sales excluded, the chapter 123 ratio would be further reduced from 45.11% to 44.91%. The trial judge rejected the challenge because "there is nothing in the record which shows that those 53 sales were sales to insiders."

There was no direct evidence from the participants in any of the challenged sales that the sale prices were less than what a willing buyer would have paid a willing seller. As the trier of fact, the trial judge could reject plaintiff's hearsay and inferential evidence—particularly if plaintiff bore the burden of proving not only that the challenged sales fell within one of the "nonusable" categories enumerated by the regulation but also that the sales prices in fact were below market value.

We thus arrive at the main issue in this appeal. Plaintiff contends that once it has shown that a sale used by the Director to establish a chapter 123 ratio falls within a "nonusable" category under the regulation, the burden shifts to the Borough to prove that the sale price was nevertheless at market value. The Borough and the Director, whom the trial judge permitted to intervene, contend that the burden is on the taxpayer to prove that such a sale price was below market value.

Plaintiff relies on the language of *N.J.A.C.* 18:12–1.1(b) that permits the Director to use a sale in a "nonusable" category only if "after full investigation" it clearly appears that the sale was between a willing seller and buyer. The Director acknowledges that he used the sales in question to establish the chapter 123 ratio without having made a full investigation of each transaction. He claims that he does not have the resources to

investigate every possible nonusable sale in the State to determine whether the price was at market value.

■ The Director's inability to follow the procedures prescribed by his in-house regulation for determining the average ratio does not place on the Borough the burden of proving that an assessment based on that ratio was valid. Even where an incorrect methodology was used to calculate an assessment, the assessment is presumed valid unless the taxpayer can prove that "the *quantum* of the assessment was far wide of the mark of true value, ..." *Pantasote Co. v. City of Passaic,* 100 *N.J.* 408, 415, 495 *A.*2d 1308 (1985). As the Court explained in *Pantasote* at 413, 495 *A.*2d 1308:

> It is clear that the presumption [that an assessment is valid] is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law. [Citation omitted.]

Thus even if the Director used a sale that by his regulations is suspect, the taxpayer has the burden of proving that in fact the sale price was less than market value and that its use by the Director produced an invalid assessment.

■ Plaintiff also argues that the trial judge erroneously failed to apply marketing and unearned entrepreneurial profit discounts, as he did when he reviewed the previous year's assessment in an earlier appeal. The judge adequately distinguished plaintiff's current circumstances from its circumstances a year earlier when the conversion to a cooperative had been stalled in litigation with the tenants.

■ Plaintiff argues that in determining share value, the trial judge erroneously excluded thirty-one sales by tenants to assignees. We defer to the judge's expertise in finding that the tenants received less than market value for the assignment of their rights as tenants. *Southbridge Park, Inc. v. Borough of Fort Lee,* 201 *N.J.Super.* 91, 94, 492 *A.*2d 1026 (App.Div.1985).

 Finally, plaintiff contends that the trial judge erroneously omitted two alleged resales in determining share value. Plaintiff's expert testified that the share value for one of the sales' was $343.62 on January 21, 1986 and the other was $322.02 on April 2, 1986. Assuming both sales were resales, we are satisfied from reviewing the judge's calculations that their inclusion would not have affected his finding that a share was worth $358 on October 1, 1986, the assessment day. The average share price for sales before the assessment day was $393.31 and the average price after was $343.29.

Affirmed.

622 A.2d 1353
GREAT FALLS BANK, PLAINTIFF, v. JOSEPH PARDO, SAMUEL PETRACCA, A/K/A SAM PETRACCA AND SAMUEL S. PETRACCA AND MARIA PETRACCA A/K/A MARIA D. PETRACCA, JOHN F. KENNEDY MEDICAL CENTER, AND THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Union County
General Equity

January 27, 1993.