640 A.2d 811

1530 OWNERS CORP., PLAINTIFF–APPELLANT, v. BOROUGH
OF FORT LEE, DEFENDANT–RESPONDENT.

Argued February 28, 1994—Decided May 11, 1994.

*Carl G. Weisenfeld,* argued the cause for appellant (*Hannoch Weisman,* attorneys; *Mr. Weisenfeld* and *Robert H. Solomon,* on the briefs).

*George G. Frino,* argued the cause for respondent Borough of Fort Lee.

*Julian F. Gorelli,* Deputy Attorney General, argued the cause for respondent Director, Division of Taxation (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

HANDLER, J.

In this local property tax matter, the owner of a multi-unit high-rise cooperative building challenges the 1987 tax assessment on its property as discriminatory. Under current standards governing real-property taxation, if the ratio of assessed value to market value of an individual property exceeds the "average ratio" for the taxing district by more than fifteen percent, the tax on the

property must be adjusted by reducing the assessed value through the application of the average ratio.

The Director of the Division of Taxation promulgates the average ratio, pursuant to *N.J.S.A.* 54:1–35a, also generally referred to as the "chapter 123" ratio, using the sales of real property in the respective taxing district as an indicator of the market value of property. The property owner in this case contends that the chapter 123 ratio applicable to the taxing district was invalid because it included sales that were "nonusable" under the Director's regulation, and hence the taxing district could not use the ratio to fix the assessment of its property.

The Tax Court rejected taxpayer's argument that the challenged sales relied upon in promulgating the chapter 123 ratio were "nonusable." The Appellate Division affirmed that judgment, 263 *N.J.Super.* 382, 622 *A.*2d 1350 (1993). We granted certification, 134 *N.J.* 478, 634 *A.*2d 525 (1993).

The issue on appeal is narrow. It is whether, when challenging the inclusion of sales in the chapter 123 ratio, a taxpayer may succeed by making a *prima facie* showing that the challenged transactions fall within a "nonusable" category without the Director having "fully investigated" those sales to determine their includability.

I

Plaintiff, 1530 Owners Corporation ("plaintiff" or "taxpayer"), is the owner of a 483–unit high-rise cooperative apartment building in the Borough of Fort Lee (the "Borough"). In 1985, the property was converted from an income-producing apartment building to a cooperative-apartment building causing the Borough to increase its assessment of the property. Plaintiff brought an action before the Tax Court claiming that the assessment of the subject property for the tax year 1987 was discriminatory.

The Tax Court equated the property's value with the total value of the cooperative's shares, using as comparable sales the prices

for which shares were sold to outsiders within about a year before and after the assessment date. After allowing discounts for senior-citizen tenants and for tenants protected by the anti-eviction statute, the court found the value of the property to be $121,799,169. Based on that value, the $78,000,000 assessment levied by the Borough exceeded the common level range, which is defined by a limit of fifteen percent above the average ratio. The court therefore applied the chapter 123 ratio established by the Director and arrived at a total assessment of $61,508,600.

The Tax Court rejected taxpayer's argument that certain challenged sales should have been excluded because the Director had failed to make a full investigation regarding whether the sales reflected market value. That court also determined that taxpayer's evidence was insufficient to show that the challenged sales did not reflect market value.

On appeal, the Appellate Division ruled that taxpayer had failed to fulfill its burden of proof to invalidate the chapter 123 ratio applicable to the taxing district, and the court sustained the determination of the Tax Court. 263 *N.J.Super.* at 386–88, 622 *A.*2d 1350.

## II

Claims of property-tax discrimination are resolved through application of the chapter 123 ratio, which establishes the average ratio of assessed value to true value for all taxable properties within a taxing district. In order to address the claim of the taxpayer in this case, a basic understanding of the methodology for formulating the chapter 123 ratio is essential.

*N.J.S.A.* 54:51A–6 directs the Tax Court to use the chapter 123 ratio as promulgated by the Director in providing relief against discrimination in tax appeals. The chapter 123 ratio is determined under *N.J.S.A.* 54:1–35a. That statute establishes that the chapter 123 ratio is the same ratio as the ratio in the Director's annual sales-ratio study known as the Table of Equalized Valuations, pursuant to *N.J.S.A.* 54:1–35.1. The State devised the Table of

Equalized Valuations to allocate school aid among municipalities. It is also generally used by county boards of taxation to satisfy their obligation to promulgate an equalization table for purposes of allocating the county tax burden among all taxing districts within each county. *Kearny v. Division of Tax Appeals,* 35 *N.J.* 299, 303, 173 *A.*2d 8 (1961).

The chapter 123 ratio, derived from the Table of Equalized Valuations, is thus computed according to an established formula and is based on a study of sales recorded during a one-year sampling period. *Ibid.* The Director screens and investigates the various sales of real property to determine which of those sales to use in the study. The standards applied in determining usability are reflected in *N.J.A.C.* 18:12–1.1. Generally, sales are usable if they constitute an arms-length transaction that reflects the market value of the property. The regulation identifies twenty-seven categories of sales that "should generally be excluded [when establishing a chapter 123 ratio]." *N.J.A.C.* 18:12–1.1(b). The regulation further provides, however, that a transaction in one of those categories "may be used if after full investigation it clearly appears that the transaction was a sale between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, and that it meets all other requisites of a usable sale." *N.J.A.C.* 18:12–1.1(b).

The Court in *Kearny* described how the Director calculates the Table of Equalized Valuations: "An overall average ratio is calculated ... which, by application to the total assessed value of real property in the municipality under study, as reported by its assessor, produces the aggregate equalized (hypothetically the true) value of such property." 35 *N.J.* at 303, 173 *A.*2d 8. It noted, however, "No one suggests that the aggregate true value of real property ratables reached by such means actually or accurately represents the market value." *Ibid.*

This pragmatic perception of the functions and limitations of equalized-valuation studies carries over to their use through chapter 123 as a substantive measure to identify discrimination in the

assessment of individual properties and as a remedial device to rectify such discrimination. Thus, chapter 123 provides for a mechanism to determine a range of acceptable assessments. A taxpayer with an assessment that falls out of that range is entitled to appropriate relief. As the Court explained in *Murnick v. Ashbury Park*, 95 *N.J.* 452, 456–57, 471 *A.*2d 1196 (1984):

> Under the statute [chapter 123], the test is whether the ratio of assessed to true value of the property in question exceeds by 15% the average ratio for the district. When a taxpayer is entitled to relief, the assessment is adjusted by applying the district average ratio to the true value of the property.

Except in those rare cases of egregious discrimination in which a taxpayer is entitled to constitutional relief, chapter 123 establishes both the right to and measure of relief. "If the assessment ratio applied to a parcel substantially exceeds the assessment ratio applied generally in a taxing district, the taxpayer has a right to relief." *Id.* at 458, 471 *A.*2d 1196.

The Court in *Murnick* also concluded that a taxpayer has the right to show that the Director should have excluded certain sales from the data used in calculating the average ratio. "If the Director has included incorrect information that substantially skews the ratio, a taxpayer has a right to bring a timely application to correct the deviation." *Id.* at 464, 471 *A.*2d 1196.

### III

Plaintiff argued to the Tax Court that the computation of the chapter 123 ratio, as promulgated by the Director, was erroneous. Relying on the Director's regulation, *N.J.A.C.* 18:12–1.1, it challenged the inclusion of certain transactions in the computation. Taxpayer presented what it contends was sufficient evidence to establish that the challenged transactions fall within the nonusable categories of the Director's regulation and that the exclusion of those sales would substantially affect the chapter 123 ratio for the Borough. According to the evidence, if the challenged sales were excluded, the chapter 123 ratio would have decreased from 50.50% to 44.91%. Applying the lower ratio to the Borough's initially discriminatory assessment, would have reduced the initial $78,-

000,000 assessment to $54,700,000 rather than to $61,508,600. Plaintiff claims further that in the absence of a "full investigation" of those sales by the Director to demonstrate that they reflected market value, its evidence was sufficient to warrant their exclusion from the chapter 123 ratio.

Specifically, taxpayer disputed the use of two sales that the Director alleged were "[s]ales between a corporation and its stockholder, its subsidiary, its affiliate or another corporation whose stock is in the same ownership." *N.J.A.C.* 18:12–1.1(a)(3). Plaintiff also challenged the use of fifty-three sales in a condominium conversion because they allegedly constituted so-called insider sales. Plaintiff relied on a catch-all category of nonusable sales defined in *N.J.A.C.* 18:12–1.1(a)(26) as follows: "Sales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell."

In contesting the use of the respective sales, taxpayer presented the testimony of an expert qualified as a real-estate appraiser (but not qualified as an expert on the Director's sales-ratio studies) who testified concerning what he had learned from various parties involved in the disputed sales.

At the taxpayer's request the Tax Court also admitted the deposition transcripts of two representatives of the Division of Taxation: John Raney, superintendent of the Local Property Branch of the Division of Taxation (responsible for the sales-ratio section, which determines the use of sales for the chapter 123 ratio), and David Taylor, senior field representative in the sales-ratio section of the Division of Taxation (responsible for evaluating the SR–1A forms, which are generally furnished by local tax assessors and provide information about sales transactions that are potentially includable in the chapter 123 ratio and indicate whether an investigation occurred). The court also admitted into evidence four SR–1A forms and the listing of the usable sales included in the chapter 123 ratio.

The first of the related-parties sales was from Cadmus Enterprises to Westgate Condominiums Corp. Cadmus was a joint venture, 50% of which consisted of two limited partnerships, Alcestis Land Corp. and Admetus Ltd., controlled by Arthur Imperatore, who thus controlled 50% of Cadmus. The remaining 50% of Cadmus was controlled by Ray Development, Ltd., which was 100% owned by Charles and Frank Raimondo. The Raimondo brothers also owned 50% of Westgate Condominiums Corp. Thus the Raimondos owned 50% of Westgate and 50% of Cadmus. The SR–1A form indicated that an investigation occurred and that the sale was deemed "usable." The SR–1A form also indicated that the field investigator had communicated with Mr. Hoskins, an attorney who had prepared the Cadmus deed.

The second alleged related-parties transaction was from Raimondo Realty Corp. to Westgate Condominiums Corp. Raimondo Realty Corp. was 100% owned by the Raimondo brothers. Thus, in the second sale, the Raimondos owned 100% of the seller and 50% of the buyer. The SR–1A form indicates that no investigation was made.

Taxpayer also challenged fifty-three sales of condominium units as nonusable on the grounds that such sales consisted of "insider" purchases. State law gives existing tenants certain rights in a conversion to a condominium form of ownership. To attract such tenants as purchasers, the sponsor generally gives them discounted prices, and they are referred to as "insiders."

The listing of sales included in the chapter 123 ratio and the SR–1A forms indicated that two of the fifty-three sales had been sent for investigation. No investigation was ordered for the remaining fifty-one sales. David Taylor testified that the sale of condominium units from the sponsor of the condominiums to a tenant are normally subject to a full field investigation.

The Tax Court concluded that taxpayer's only evidence was the hearsay testimony of its appraiser based on "what he had learned from various parties." The Tax Court further noted the absence of any testimony by parties, real estate brokers, or attorneys

involved in the challenged sales. In addition, no evidence indicated that the sales involved "consideration that was arbitrarily set or reflected additional items beyond the sales of the real property in question," as required by *N.J.A.C.* 18:12–1.1(b). The Appellate Division affirmed the determination that the evidence was insufficient to require the sales to be removed from the chapter 123 ratio, also noting that the Borough's expert testified that participants in both sales had told him that the "selling prices were the result of arms-length negotiations." 263 *N.J.Super.* at 385, 622 *A.*2d 1350.

With respect to the alleged insider sales, plaintiff presented evidence that the sales price of the units was the same as the price offered to tenants in the Public Offering Statement. Plaintiff did not present evidence that the included sales had actually been made to tenants. The Tax Court rejected the challenge because "there is nothing in the record which shows that those 53 sales were sales to insiders." The Appellate Division sustained that determination, 263 *N.J.Super.* at 386, 622 *A.*2d 1350, indicating that plaintiff had failed to meet its burden of establishing *prima facie* non-usability.

Arguably, plaintiff's evidence, at least at the administrative level, might have been sufficient to indicate that the challenged sales were *prima facie* nonusable. Because the Director did not "fully investigate" those sales the issue remains whether they therefore should have been excluded from the chapter 123 ratio determination. That issue requires a determination with respect to allocation of the burden of proof.

■ On that issue we agree with the analysis and holding of the Appellate Division. That court rejected the position that to exclude challenged sales a taxpayer need show only that the Division of Taxation did not undertake an investigation as required by its own regulations for sales falling within suspect categories. The Appellate Division ruled that because assessments are presumed valid, a taxpayer's burden is not met until it proves that the investigation would have led to the Director's

exclusion of the sale. *Id.* at 387, 622 *A.*2d 1350. It held that "even if the Director used a sale that by his regulations is suspect, the taxpayer has the burden of proving that in fact the sale price was less than market value and that its use by the Director produced an invalid assessment." *Ibid.*

The regulation enumerating the twenty-seven nonusable sales categories is intended as a guide to aid the Director in accomplishing the complex and onerous task of tax equalization. The nonusable categories were created to inform the broad administrative discretion that must be brought to bear in the tax-equalization process. The Director must exercise the administrative authority to equalize taxes not only with expertise but also with extraordinary efficiency. The Court, in *Kearny, supra,* acknowledged that the "Director's task is a heavy one. In a limited time he must examine and evaluate expeditiously, and in the light of his 27 nonusable sales categories, many thousands of property transactions. His operation represents a salutary endeavor in an otherwise blurred assessment procedure." 35 *N.J.* at 310, 173 *A.*2d 8. Thus, "the entire equalization process does not and should not lend itself to rigid technicality and formalism." *Id.* at 311, 173 *A.*2d 8. Rather, the "legislative and judicial purpose is to secure as far as possible ... equal distribution." *Ibid.*

 The governmental task in equalizing tax valuations to achieve the goals of distributing school aid, allocating tax burdens, and remedying discrimination is gargantuan. The categories of nonusable sales are designed to facilitate that task. They serve as a short-hand indicator of those sales that are unlikely to have involved arms-length bargaining and therefore are unlikely to have been made at fair market value. The ultimate objective, however, is to determine not whether a sale fits into one of the nonusable categories but rather whether the sale was an arms-length transaction, reflective of the fair market value of the underlying property. Thus, for a taxpayer to prove that a sale should not have been included, it must demonstrate not simply that the challenged sale appears to fall within the nonusable

category and that the Director did not make a full investigation before using it. Rather, the taxpayer must show that inclusion of the sale in determining the ratio was in fact improper because the sale price was not made at fair market value.

We have recognized with respect to property tax assessments that even though the assessment methodology used by a municipal tax assessor was incorrect, the assessment should be upheld because it approximated the fair value of the property in question and did not manifest arbitrary disregard of the assessor's responsibilities. *Pantasote v. City of Passaic,* 100 *N.J.* 408, 495 *A.*2d 1308 (1985). Thus, "a municipality's original tax assessment is entitled to a presumption of validity," *id.* at 412, 495 *A.*2d 1308, that "attaches to the *quantum* of the tax assessment." *Id.* at 413, 495 *A.*2d 1308.

We further noted in *Pantasote*

that the presumption is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law.

[*Ibid.*]

Clearly a taxpayer has to do more than demonstrate a procedural irregularity to challenge an assessment successfully. To overcome the presumption of validity of an assessment, a taxpayer must present evidence that is " 'definite, positive and certain in quality and quantity to overcome the presumption.' " *Ibid.* (quoting *Aetna Life Ins. Co. v. Newark,* 10 *N.J.* 99, 105, 89 *A.*2d 385 (1952)).

In the context of this case, the promulgation of the chapter 123 ratio by the Director without undertaking a full investigation implicates a procedural irregularity that does not alone impugn the presumptive validity of the ratio. The taxpayer must demonstrate that the tax determination, *i.e.,* the ratio itself, is actually flawed. That would require probative evidence that the sale price of an included transaction did not reflect market value. To impose on the taxpayer, who stands to benefit from a successful

challenge, the burden of presenting such evidence is not unreasonable.

Accordingly, because taxpayer failed to meet that burden, we sustain the determination of the court below that taxpayer's evidence did not invalidate the Director's sale study and determination of the chapter 123 ratio applicable to the taxing district.

## IV

We note that in the course of this litigation taxpayer has insisted that it met its burden to overcome any presumption of validity that attends the Director's chapter 123 ratio simply by showing that the Director did not undertake a full investigation of a sale with respect to which there were some indications that it was nonusable. Consistent with that position, taxpayer has resisted the offer to present additional evidence that would demonstrate that such a sale is nonusable because it does not reflect market value.

Because we have now determined that taxpayer must meet that burden of proof, we conclude that the issue of whether the challenged sales should have been included in the chapter 123 ratio can best be addressed by a remand to the Tax Court. The Tax Court shall grant leave to taxpayer to seek to have that court reconsider its determination in light of our opinion. If that court reopens the matter on such application, taxpayer will have the burden of proving that the challenged sales were not at fair market value. If in fact the challenged sales did not reflect market value, taxpayer must then demonstrate that the aggregate aberration resulting from their inclusion in the sales study "substantially skews the ratio" under chapter 123. *Murnick, supra,* 95 *N.J.* at 464, 471 *A.*2d 1196.

Accordingly, the judgment of the Appellate Division is modified and the matter is remanded to the Tax Court for further proceedings in accordance with this opinion.

*For Modification and remandment*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—none.