OPINION
RIMM, J.T.C.
This is a local property tax matter involving valuation and discrimination. The subject property is a single family residence located at 2313 North Ocean Avenue and is designated as Block 58, Lot 3 on the tax map of defendant municipality. The significant aspect of the ease is the application of the chapter 123 ratio *106 and N.J.S.A. 54:51A-6 for the resolution of the discrimination issue.
For the tax year 1993, the assessment was as follows:
Land $407,000
Improvements 18,000
Total $425,000.
The taxpayers were dissatisfied with the assessment and filed a petition of appeal with the Ocean County Board of Taxation which affirmed the assessment by a judgment dated July 20, 1993. Following the entry of the judgment, plaintiffs filed a complaint with the Tax Court seeking a reduction in the original assessment and the county board judgment.
Plaintiffs called two witnesses: plaintiff husband, Mr. Caulfield, and a real estate appraiser.
Mr. Caulfield testified that it was his opinion that the fair market value of the property as of October 1,1992, the assessment date for the tax year 1993, was $360,000. He testified at length and submitted a number of exhibits. His main contention concerning the value of the property may be briefly summarized. The subject lot fronts on Ocean Avenue, west of North 24th Street. Ocean Avenue is a paper street that runs along the beach. The dimensions of the lot are 50 feet wide — frontage on Ocean Avenue — by 125 feet deep. Access to the subject lot is by way of a 10 foot wide easement across the lot between North 24th Street and the subject property. However, the municipality has established a dune line 50 feet north of Ocean Avenue and a building line 75 feet north of Ocean Avenue, effectively reducing the buildable area of the subject lot to 50 feet by 50 feet, subject to setback requirements. The fact of the existence of the building line and the reduced area to be considered as a building lot, namely 2500 square feet, is the primary basis for plaintiffs’ claim that their assessment is too high. Much of Mr. Caulfield’s evidence consisted of the presentation of charts, diagrams and maps showing the effect of the building line on the subject property when compared to other properties.
*107 Plaintiffs’ appraiser testified to four comparable sales. Based on these four comparable sales, it was his opinion that the subject property had a fair market value of $360,000 for the tax year 1993. In response to questions put to him on cross-examination, the appraiser also testified that the highest and best use for the subject property was its current use as a single family residence.
The municipality called the municipal assessor as its only witness. It was his opinion that the subject property had a fair market value of $415,000 for the tax year 1993. He used two approaches in valuing the property. First, he used the cost approach, using three vacant land sales to ascertain a land value. Based on the three sales, it was his opinion that the subject property had a land value of $350,000 as of October 1, 1992. He then used the State of New Jersey, Dept, of the Treasury, Div. of Taxation, Real Property Appraisal Manual for New Jersey Assessors (3d ed. 1978), to value the improvements. He determined a replacement cost new as of October 1,1992 of $91,372, from which he deducted depreciation from all sources of 36%, or $32,893, for a value of the improvements of $58,500, rounded. To this value for the improvements he added a land value of $350,000 and a site improvements value of $1,500 for a stone parking area, and concluded that the total indicated value of the subject property by the cost approach for 1993 was $410,000.
The witness also used the sales comparison approach. In this approach, he used three comparable sales and concluded that the property had a value of $415,000. It was his opinion that the more reliable of the two approaches in this case was the sales comparison approach, and, consequently, he concluded that the subject property had a fair market value of $415,000 for the tax year 1993.
The assessor’s appraisal was offered as an exhibit by counsel for the municipality and marked in evidence. It contains the following conclusion:

WARRANTED 1993 ASSESSMENT

Chapter 123 Ratios: Average: 97.23% High: 111.81% Low: 82.65%
1993 Assessment:.............'.............$425,000
Market Value:.............................$415,000
*108 Subject Assessment Ratio ($425,000/$415,000) = 102.41%
The ratio falls within the corridor as provided by Chapter 123. No assessment reduction is warranted.
It was, as indicated, Mr. Caulfield’s opinion that the property should be valued as a vacant building lot with dimensions of 50 feet by 50 feet. This contention is rejected based on his own expert’s opinion that the highest and best use of the property is its present use as a single family residence. To value the property based on a change in the highest and best use. to vacant ground for development as a single family residence, the proof would have to show that the land would then be more valuable than the land and the existing building together. To the contrary, however, the first comparable sale used by plaintiffs expert was the sale of a property on which the improvements were demolished immediately following the sale. That sale was for $860,000, and plaintiffs’ expert used that sale as a comparable without any adjustments, indicating that, based on the sale, the subject had an indicated value of $360,000. In effect, plaintiffs’ expert said that the improvements on the subject property have no value at all. By so indicating, he is contradicting his own opinion of the highest and best use of the subject property. The opinion of the highest and best use as a vacant lot is also contradicted by the facts that the property is occupied by the plaintiffs as a second, or vacation, home; it is in good condition; it is not for sale; and the plaintiffs have no intention of demolishing the improvements and replacing them with a new home on that portion of the lot within the new building line established by the municipality. The municipality’s expert also values the land at $350,000, very close to the $360,000 value indicated by plaintiffs expert for the entire property, although this value was partially based on what was essentially a vacant land sale of $360,000.
Based on the evidence presented by the municipality, I find that the fair market value of the subject property as of October 1,1992 for the tax year 1993 was $415,000.
*109 Having found the fair market value, I must now determine the correct assessment for the tax year 1993. The determination of the assessment involves the application of the chapter 123 ratio, N.J.S.A 54:l-35a, to the fair market value. “Chapter 123 must be noticed by the Tax Court judge.” Weyerhaeuser Co. v. Closter Bor., 190 N.J.Super. 528, 543, 464 A.2d 1156 (App.Div.1983); Passaic Street Realty Assoc., Inc. v. Garfield, 13 N.J.Tax 482, 487 (Tax 1994). See also 1530 Owners Corp. v. Fort Lee Bor., 135 N.J. 394, 397, 640 A.2d 811 (1994) (The Court set forth “a basic understanding of the methodology for formulating the chapter 123 ratio____”). Of course, chapter 123 does not apply to a tax year in which there has been a “district-wide revaluation.” N.J.SA 54:51A-6(d).
The method for such application is prescribed by N.J.SA 54:51A-6 which provides in part as follows:
a. Whenever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided.
b. If the average ratio is below the county percentage level and the ratio of the assessed value of the subject property to its true value exceeds the county percentage level, the tax court shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property.
c. If both the average ratio and the ratio of the assessed value of the subject property to its true value exceed the county percentage level, the tax court shall enter judgment revising the taxable value of the property by applying the county percentage level to the true value of the property.
The chapter 123 ratio is the “average ratio” promulgated for a municipality by the Director, Division of Taxation. N.J.SA 54:1-35a(a); N.J.S.A 54:1-35.1. The “common level range” is that range which is plus or minus 15% of the average ratio for the taxing district. N.J.SA 54:l-35a(b). The county percentage level in all cases is 100%. M.I. Holdings, Inc. v. Jersey City, 12 N.J.Tax 129, 145 (Tax 1991). Specifically, the Ocean County Board of Taxation adopted a resolution on March 4, 1964, in accordance with N.J.SA 54:4-2.27, establishing 100% as the percentage level of taxable value of real property in Ocean Coun *110 ty. The resolution remains in full force and effect in accordance with the statute.
For 1993, the average ratio for defendant municipality was 97.23%; the lower limit of the common level range was 82.65%; and the upper limit of the common level range was 111.81%. State of New Jersey, Dept. of the Treasury, Div. of Taxation, Certification of Average Ratios and Common Level Ranges for Use in the Tax Year 1993 (April 1, 1993).
The ratio of the original assessment of $425,000 to the fair market value of $415,000 is 102.41%. Even though, as the assessor points out, this ratio is within the common level range, it exceeds the county percentage level of 100%. Therefore, since the average ratio of 97.23% is below the county percentage level, I must “enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property.” N.J.S.A. 54:51A-6(b). The correct assessment for this property is then determined by multiplying the fair market value of $415,000 by the chapter 123 ratio of 97.23%. This produces a total assessment of $403,500, rounded. It does not result in an affirmance of the original assessment as urged by the assessor.
In M.I. Holdings, Inc., supra, the chapter 123 ratio for Jersey City for 1989 was 81.45%. The lower limit of the common level range was 69.23%, and the upper limit of the common level range was 93.67%. The ratio of the assessed value to the true value found by the court was 153.81%. Since the .average ratio of 81.45% was below the county percentage level and the ratio of the assessed value to true value exceeded the county percentage level, N.J.S.A. 54:51A-6(b) applied. The assessment was revised by applying the average ratio to the true value. Id. at 145-46.
In the present case, even though the average ratio, 97.23%, is below the county percentage level and the ratio of the assessed value to true value, 102.4%, exceeds the county percentage level, the municipality takes the position that N.J.S.A 54:51A-6(b) does not apply because the ratio of the assessed value to true value is, nevertheless, within the common level range. The municipality, however, misconstrues both the statute and M.I. Holdings, Inc. *111 If the conditions of N.J.S.A 54:51A-6(b) are met, that section is applied and the assessed value of the property is determined by applying the average ratio to the true value of the property without regard to the common level range. To the same effect is Passaic Street Realty Assoc., Inc., supra.
In the present case, as indicated, the ratio of assessed value to true value does not exceed the upper limit of the common level range; but since it exceeds 100%, the assessment is determined by applying the chapter 123 ratio to the true value. This case, then, is an example of another fact pattern to be considered with the fact patterns and the holdings of M.I. Holdings, Inc. and Passaic Street Realty Assoc., Inc.
Of course, an assessment may not exceed true value in any event. In Abe Schrader Corp. v. Secaucus, 8 N.J.Tax 390 (Tax 1986), the average ratio for 1984 was 120.6%; the lower limit of the common level range was 102.51%; and the ratio of assessment of the property in issue to true value was 88%. Accordingly, N.J.S.A 54:51A-6(a) was applicable by its terms. Those terms would have required the court to apply a ratio of 120.6% to the value determined by the court, resulting in an assessment in excess of the value of the property. Judge Crabtree rejected that result and, relying on N.J.S.A 54:4r-2.25 and N.J.S.A 54:4.2.26, concluded that an assessment may not exceed 100% of true value. He therefore fixed the assessment for 1984 at the true value he had found for that year. For 1985, the assessment was also fixed at true value based on a chapter 123 ratio of 108.9%; a lower limit of 92.56%; and a ratio of assessed value to true value of 84%.
One of the purposes of the statutory system is to insure that the assessment never exceeds the fair market value of the subject property. Thus, depending on the specific facts of each case — that is, all the ratios involved, an assessment will always be equal to or less than the fair market value of the property.
In addition, it may fairly be observed that the purpose of an appraisal and the expert’s evidence is to set forth the appraiser’s opinion of the fair market value of the subject property. An *112 appraisal should not deal with the proposed assessment, and the appraiser should not go into the mathematics of the assessment involving the chapter 123 ratio. The only proper reference to the chapter 123 ratio in an appraisal report is to the calculation of the effective tax rate as a factor of the capitalization rate if the income approach to the value of the property is used. See New Brunswick v. Division of Tax Appeals, 39 N.J. 537, 189 A.2d 702 (1963). The only proper reference in an appraisal report to a ratio to be used for discrimination relief occurs when the appraiser is also the expert promulgating a ratio claimed to be superior to that of the chapter 123 ratio for such relief. See Murnick v. Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984). It is the court’s province to. apply the chapter 123 ratio automatically or to deal with such other discrimination relief as may be required by the proofs presented.
Judgment will be entered fixing the assessment for 1993 as follows:
Land $386,400
Improvements 17,100
Total $403,500.
For administrative purposes, I have fixed the improvements and land at the same relationship to the total that they had in the original assessment.