PER CURIAM.
Plaintiff Borough of Englewood Cliffs (Englewood Cliffs) appeals from a final judgment of the Tax Court, which rejected its challenge to the defendant Director of the Division of Taxation’s determination of the municipality’s 1998 Table of Equalized Valuations.
Pursuant to N.J.S.A. 54:1-35.1, the Director is required to promulgate a table of equalized valuations for each municipality. The procedure involved in the preparation of this table is described in 43 Ne'iv Jersey Practice, State & Local Taxation § 14.2 (David E. Crabtree) (1999). The first step is the determination of the full and fair value of each parcel by the municipal tax assessor. Each parcel is then placed in one of four classes: (1) vacant land, (2) one-to-four family residential, (3) agricultural and (4) commercial, industrial and multi-family dwellings. The sum of the assessments in each class is reported to the county board of taxation and the Director. The second step in the preparation of the table is reporting the sales prices and assessed values of all real property sold during the sampling period to the Director, who then “discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results!.] ... These are called nonusable sales.” Id. at 257. The remaining “usable” sales are used to calculate individual class ratios, which are “determined by adding all the assessments of the properties sold in the class, adding all the sale prices in the class and dividing the former by the latter.” Ibid. After the class ratios are established, the next step is to determine the aggregate true value of all properties in each class. This is accomplished by dividing the aggregate property assessments of each class by the class ratio. The aggregate assessments of all properties in all four classes are divided by the aggregate true value of all properties to produce the weighted classified ratio for the computation *666 year. The aggregate assessments of all properties in all classes are divided by the district weighted classified ratio to produce the equalized true value for the computation year. The equalized true value for the computation year is averaged with the prior year’s equalized true value. The aggregate assessments for the computation year are then divided by the average equalized true value of the two years (computation year and prior year) to produce the sales assessment ratio.
The Director promulgates the sales assessment ratio for the purpose 'of state school aid distribution. N.J.S.A. 54:1-35.1. This ratio is also used to determine assessment discrimination claims by property owners. N.J.S.A. 54:1-85a(a); N.J.S.A. 54:51A-6(a); see 1530 Owners Corp. v. Borough of Fort Lee, 135 N.J. 394, 397, 640 A.2d 811 (1994). In addition, the sales assessment ratio is commonly adopted in comity equalization tables prepared under N.J.S.A. 54:3-17, which are used to allocate the cost of county government among a county’s municipalities.[1] Crabtree, supra, § 14.4 at 266 n. 17; see 1530 Owners Corp., supra, 135 N.J. at 398, 640 A.2d 811.
Englewood Cliffs filed a complaint in the Tax Court, which claimed that the Director had erred in excluding Prenticé-Hall’s sale of two contiguous lots as nonusable in calculating Englewood Cliffs’ table of equalized valuations for .1998. The Prentice-Hall property had been assessed at $54,999,500, but sold for only $12,000,000, creating a 458.33% assessed to true value ratio. The Prentice-Hall property was designated as Class 4A commercial property. The ratios for the five Class 4A property sales from 1998 that were deemed usable ranged from a low of 84.38% to a high of 121.14%. The Director concluded that the Prentice-Hall sale was nonusable, because its ratio deviated too greatly from the *667 sales ratios of the usable properties and would distort the final calculated ratio. If the sale had been deemed usable, the Class 4A weighted assessment ratio would have been 350.63%, instead of 109.84%, and Englewood Cliffs’ overall ratio would have been 95.11%, instead of 86.27%.
Englewood Cliffs’ complaint challenged the exclusion of this sale on the ground that it was an arms-length, bona fide transaction that did not fall within any of the twenty-seven categories of nonusable sales set forth in N.J.A.C. 18:12-1.1. The Director moved for summary judgment, arguing that the Division of Taxation has consistently interpreted the “catch-all” provision of N.J.A.C. 18:12-1.l(a)(26), which provides for exclusion from the assessment study of “sales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell,” to authorize exclusion of a sale if there is an aberrant ratio between the assessed value and sales price that would distort the municipality’s overall assessment ratio.
Judge Pizzuto issued an oral opinion upholding the Director’s determination to exclude the sale of the Prentice-Hall property in calculating Englewood Cliffs’ sales assessment ratio. Judge Pizzuto noted that the “equalization of tax assessments” and “calculation of the assessment ratios” must be “accorded particular deference by the judiciary.” Therefore, the Tax Court’s review of the criteria for excluding sales from the ratio study and application of those criteria to individual sales is governed by a “standard of reasonableness.” Judge Pizzuto further concluded that “the Director is not limited by the absence of a specific category in [N.J.A.C. 18:12-1.1(a)]” in deciding that a sale is nonusable. He noted that for many years the Director has treated category twenty-six as a “catch-all category” that authorizes the exclusion of any sale that is “excessively high” or “excessively low.” Judge Pizzuto also rioted that the Director’s long-standing interpretation of category twenty-six has been sustained in unreported decisions of this court and the former Division of Tax Appeals. Borough of *668 Sayreville v. Middlesex County Bd. of Taxation, No. A-1314-71 (App.Div. Dec. 6, 1972); Borough of Roosevelt v. Director, Division of Taxation, No. S.A. 1-77 (Div.Tax.App. Jan. 30, 1978). However, Judge Pizzuto also expressed concerns about the Director’s expansive use of category twenty-six:
Where the line is to be drawn in the application of this rule is very difficult to say----I think there can be some legitimate concern that the application of this rule can lead to ... argument over either inclusion or exclusion of sales. If the Director can exclude a 450 percent sale, he should arguably exclude sales at low ratios, too, and I presume that he does so. The appropriateness of the decision to exclude any given sale where the facts are not as extreme as they are in this case may be a more difficult question to determine. [I]f the Director is going to employ this criterion ... other than [in] the most extreme cases, and it is not clear from the record of this action whether it is employed only in extreme cases ... [p]erhaps the Director ought to consider establishing a ruie or a formula ... or at least a rule of practice that can be applied uniformly and that can solve [sic] to satisfy the courts and the municipalities that sales are being uniformly treated from year to year and from municipality to municipality.
On appeal, Englewood Cliffs argues that the Director improperly excluded the sale of the Prentice-Hall property by invoking N.J.A.C. 18:12-1.1(a)(26) in a circumstance to which it clearly does not apply. Englewood Cliffs contends that even if it would be appropriate for the Director to exclude a sale solely because its inclusion would grossly distort the sales assessment ratio, the Director should first adopt a regulation containing standards for exclusion from the ratio study on this basis.
We conclude that the Director properly excluded the Prentice-Hall sale in calculating Englewood Cliffs’ assessment ratio, but that the Director should adopt a regulation that deals specifically with the exclusion of sales transactions from the assessment ratio study when an assessment is not representative of a municipality’s assessing practices.
N.J.A.C. 18:12-1.1(a) describes twenty-seven categories of real estate transactions that the Director ordinarily will exclude in calculating a municipality’s assessment ratio. The Supreme Court has categorized these categories “as a guide to aid the Director in accomplishing the complex and onerous task of tax equalization.” 1530 Owners Corp., supra, 135 N.J. at 403, 640 A.2d 811. The Court has also indicated that “the entire equaliza *669 tion process does not and should not lend itself to rigid technicality and formalism.” Ibid. (quoting Town of Kearny v. Division of Tax Appeals, 35 N.J. 299, 311, 173 A.2d 8 (1961)).
An assessment ratio involves a comparison of two sets of figures: the sales prices of properties sold during a given period and the assessments of those properties. Thus, the ratio can be distorted by including in the comparison either unreliable sales prices or unrepresentative assessments. Therefore, there is a rational basis for the Director’s long-standing policy of excluding a sale from the comparison if the assessed value of the property is not representative of the municipality’s assessing practices. See Northvale Borough v. Director, Div. of Taxation, 17 N.J.Tax 204, 209-10 (Tax 1998), aff’d o.b., 324 N.J.Super. 518, 736 A.2d 529 (App.Div.), certif. denied, 161 N.J. 147, 735 A.2d 572 (1999); Cranbury Township v. Middlesex County Bd. of Taxation, 6 N.J.Tax 501, 511-12 (Tax 1984), aff’d o.b., 7 N.J.Tax 667 (App.Div.1985).
The twenty-seven categories set forth in N.J.A.C. 18:12-1.1 are primarily designed to identify “sales that are unlikely to have involved arms-length bargaining and therefore are unlikely to have been made at fair market value.” 15'SO Owners Corp., supra, 135 N.J. at 403, 640 A.2d 811. However, a number of the categories of nonusable sales described in N.J.A.C. 18:12-1.1(a) attempt to identify properties with distorted assessments. For example, category seven excludes “[s]ales of property substantially improved subsequent to assessment and prior to the sale thereof,” category sixteen excludes “[sjales of property assessed in more than one taxing district,” and category twenty-four excludes “[s]ales of property, the value of which has been materially influenced by zoning changes where the latter are not reflected in current assessments.” Thus, the categories of nonusable sales described in N.J.A.C. 18:12-1.1 are properly designed to identify both sales that are not reflective of fair market value and assessments that are not representative of a municipality’s assessing practices.
*670 However, category twenty-six, which the Director relied upon to exclude the sale of the Prentice-Hall property in calculating Englewood Cliffs’ assessment ratio for 1998, does not contain any standards for identifying assessments that are not representative of a municipality’s assessing practices. It excludes:
Sales which for some reason other than specified in the enumerated categories are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell;
[N.J.A.C. 18:12 — 1.1(a)(26).]
Thus, by its plain terms, category twenty-six applies oxxly to sales that “are not deemed to be transactions between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell.”
The Director correctly characterizes category twenty-six as “catch-all” category, but what it attempts to “catch” is solely unreliable sales that do not fit iixto any of the other more specific categories of sales that are not inflective of market value. It does not undertake to identify assessments that are not representative of a municipality’s assessing practices.
We recognize that for many years the Director has invoked category twenty-six to exclude from the assessment ratio study certain assessments which he deems not to be representative of a municipality’s assessing practices. Moreover, nearly thirty year’s ago, this court upheld the Director's exclusion from an assessment ratio study of a sale of preperty upon which there was an excessively inflated assessment. Borough of Sayreville v. Middlesex County Bd. of Taxation, supra.
 However, the Director’s long-standing policy of invoking category twenty-six in cmcumstances that are beyond its plain language is not an appropriate substitute for the adoption of an administi-ative regulation that specifically addresses the exclusion from the assessment ratio study of sales of property assessed at values that, are not representative óf a municipality’s assessing practices. “[A]n agency may not use its power to interpret its own regulations as a means of amending those regulations or adopting new regulations.” Venuti v. Cape May County Constr. Bd. of Appeals, 231 N.J.Super. 546, 554, 555 A.2d 1175 (App.Div. *671 1989). An administrative regulation which expressly deals with the exclusion of sales that are not representative of a municipality’s assessing practices is required to inform municipal tkx assessors of the applicable standards and to guide the Division in performing its responsibilities. See Lower Main St. Assocs. v. New Jersey Hous. & Mortgage Fin. Agency, 114 N.J. 226, 235, 553 A.2d 798 (1989); Boller Beverages, Inc. v. Davis, 38 N.J. 138, 151-52, 183 A.2d 64 (1962). The adoption of such a regulation also would enable “parties affected by the proposed agency action [to] participate in the process leading to the agency determination.” Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 330, 478 A.2d 742 (1984).
Finally, we must decide whether the Director’s failure to formalize his policy of excluding sales of real property which are assessed at values that are not representative of a municipality’s assessment practices from an assessment ratio study requires the reversal of Englewood Cliffs’ 1998 Table of Equalized Valuations. We note that the Director’s overly expansive interpretation of category twenty-six is apparently a long-standing policy that is well-known by municipal assessors. Moreover, we agree with Judge Pizzuto that the ratio between the assessed value and sales price of the Prentice-Hall property was so disproportionate to the ratio reflected by other useable sales that the Director could reasonably conclude that its inclusion in Englewood Cliffs’ assessment study would result in a distortion in the assessment ratio. Therefore, even though the Director’s policy of excluding sales of real property assessed at values that are not representative of a municipality’s assessment practices from an assessment ratio study should be formalized by adoption of a specific regulation containing appropriate standards, we conclude that the Director’s decision in this case was reasonable and should be upheld.
Affirmed.

 Because Englewood Cliffs is a "minimum school aid district," it claims that an increase in its assessment ratio would not increase the school aid it receives from the State. Moreover, Englewood Cliffs did not challenge the county equalization table for 1999. Consequently, the potential impact’of the sales assessment ratio upon assessment discrimination claims by .property owners is apparently Englewood Cliffs’ sole interest in pursuing this matter.