NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:   (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 21, 2018

**UPLOADED AND BY FIRST-CLASS MAIL**
Paul Fabricatore, Self-Represented
Toms River, New Jersey

**UPLOADED**
Kenneth Fitzsimmons, Esq.
33 Washington Street
Toms River, New Jersey 08753

> Re:    Fabricatore v. Township of Toms River
> Block 192.56, Lot 41.04
> <u>Docket No. 009633- 2017</u>

Dear Mr. Fabricatore and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter.

Plaintiff owns a residence, the above-captioned property ("Subject"), in defendant ("Township").

For tax year 2017, plaintiff petitioned the Ocean County Board of Taxation ("County Board") to

reduce the Subject's local property tax assessment from $400,000 (allocated $123,800 to land, and

$276,200 to improvements) to $329,582.[1]  By judgment dated May 26, 2017, the County Board

affirmed the original assessment of $400,000 using judgment code 2A ("assessed within range").

Plaintiff timely appealed the County Board's judgment to this court.

---

[1] The assessment for tax year 2014 was $467,100 (allocated $123,800 to land and $343,300 to improvements). The assessment for tax years 2015-2016 was $400,000 (allocated $123,800 to land and $276,200 to improvements), which is the same assessment for 2017.

*

The Subject is a single family residence consisting of a two-story building with three bedrooms, two full baths, and two half baths with a total gross living area ("GLA") of about 2,308 square feet ("SF") located on about one acre of land. There is a full finished basement and a den located within the Subject. The Subject has a two car garage and an in-ground pool. Furthermore, plaintiff stated that the Subject is not located in a development with cookie-cutter homes. Plaintiff was unsure of the exact age of the Subject, but estimated that the Subject was approximately twenty-six years old.

Plaintiff relied upon six comparables, all of which were in the Township, and their sales occurred as of, or proximate to, the assessment date of October 1, 2016, as follows:

| | Address | Built | Lot Size | GLA | Sale Date | Sale Price | Room Count | Other |
|---|---|---|---|---|---|---|---|---|
| 1 | 1939 Whitesville Road | 1989 | 1.02 ac | 2,443 SF | 2/23/16 | $325,000 | 4 beds; 2 1/2 baths | Basement; In-ground pool; Attached garage |
| 2 | 1440 Silverton Road | | 1.09 ac | 2,695 SF | 7/18/16 | $345,000 | 4 beds; 2 baths | Basement; In-ground pool; Detached garage |
| 3 | 112 Peacock Place | 1986 | 0.75 ac | 2,444 SF | 9/30/16 | $329,000 | 3 beds; 2 ½ baths | Basement; In-ground pool; Attached garage |
| 4 | 1021 Gregory Terrace | 1993 | | 2,047 SF | 01/25/16 | $347,000 | 4 beds; 2 ½ baths | Basement; In-ground pool; Attached garage |
| 5 | 1784 Rolling Ridge Lane | 1986 | 0.57 ac | 2,512 SF | 04/06/16 | $355,000 | 4 beds; 2 ½ baths | Basement; In-ground pool; Attached garage |
| 6 | 183 Lamdan Lane | 1988 | | 2,496 SF | 09/14/16 | $375,100 | 4 beds; 2 ½ baths | Basement; Attached garage |

All the information that plaintiff presented to the court, in regards to the comparables was obtained off the comparables' Multiple Listing Services ("MLS'). In presenting his case to the court, plaintiff relied upon a spreadsheet, which took the comparables' MLS sale price for each comparable and divided by the square footage of said comparable. The spreadsheet also took the assessed value of the Subject and divided it by the square footage of the Subject. Plaintiff then determined the total average per square foot of the comparables by adding the average cost per

square foot of all six comparables together and dividing that number by six (i.e. the number of comparables). This calculation led plaintiff to the conclusion that the Subject's average cost per square foot is $30.51 more per square foot than the total average per square foot of all six comparables.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J.Super. 271, 285-86 (App. Div. 1998).

A taxpayer can rebut the presumption by introducing "cogent evidence," which is evidence that is "'definite, positive, and certain in quality and quantity.'" Pantasote, 100 N.J. at 413 (citing Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)). Plaintiff must present the court with "evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment." MSGW, 18 N.J. Tax at 376. Disagreement with an assessment must be based on "'sound theory and objective data rather than on mere wishful thinking.'" Ibid.

If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of

persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

If, at the close of plaintiff's proofs, the court is presented with a motion to dismiss under R. 4:37-2(b), in evaluating whether plaintiff's evidence meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW, 18 N.J. Tax at 376. If the court decides that the plaintiff did not overcome the presumptive correctness, then the assessment should be affirmed. Ibid. Thus, if a party has not met this burden, the trial court need not engage in a further evaluation of the evidence to make an independent determination of value.

The market approach (or using comparable sales) is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

Plaintiff chose sales of residences located in the Township, with similar bedroom count and amenities, whose sales date was proximate to the assessment date. Plaintiff did not personally inspect the interior or exterior of the comparables, and was unsure as to the exterior or interior conditions of the comparables, whether or not the comparables were located in a development, and whether or not the comparables had a basement. Moreover, plaintiff did not verify whether the sales price of the comparables were usable sale prices.

While plaintiff's selection of comparables is facially not at all unreasonable, the problem lies in deeming them comparable to the Subject, based simply upon GLA (or room count) and certain commonly shared amenities, such as a pool. Although the comparables are chronologically older than the Subject by about five-to-seven years (except for comparable 4, which appears to be the same as the Subject, and comparable 2 as to which plaintiff had no information), and given the less than 10-year age difference may not require any adjustment, there are other issues with the comparables that can be significant in terms of either requiring adjustments or deeming those sales as not comparable. For instance, comparable 5's lot size is half of the Subject's lot size. Comparable 3 is situated on a plot of land that is about .25 acres smaller than the Subject's. There was no information as to the lot sizes of comparables 4 and 6. Comparable 4's GLA is about 400 SF smaller than the Subject. The calculations that plaintiff provided the court failed to account for any adjustments due to these features.

Comparable 6 was marked with a NU-10 code, which applies to "[s]ales by guardians, testamentary trustees, executors, and administrators."[2] This raises a question whether the sale was an arms-length transaction, between a willing buyer and a willing seller, neither under a compulsion to buy or sell. If "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care," thus, the "circumstances of the sale must be thoroughly researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable. See id. at 410. Perhaps this is why comparable 6

---

[2] In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666.

was on the market for 505 days. Comparable 3 on the other hand, was on the market for all of nine days. Without any explanation as to the typical amount of time for market exposure in the Township (and the Subject's neighborhood), these facts can raise issues of comparability. Of course, these issues could be satisfactorily explained, but that was not done here. Sole reliance on the MLS data is thus, not always useful. There must always be independent verification of the same. Thus, the statute itself provides:

> In any action or proceeding . . . on review of the assessment for taxes of any real property, or in any action or proceeding in the Tax Court, any person offered as a witness in any such action or proceeding shall be competent to testify as to sales of comparable land, including any improvements thereon, contiguous or adjacent to the land in question, or in the vicinity or locality thereof, or otherwise comparable, from information or knowledge of such sales, obtained from the owner, seller, purchaser, lessee or occupant of such comparable land, or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales, which testimony when so offered, shall be competent and admissible evidence in any such action or proceeding.
>
> [N.J.S.A. 2A:83-1 (emphasis added)].

Yet another problem was the lack of information with respect to whether the comparables were all in the same zone as the Subject, which then, due to minimum lot size requirements or other limitations, may require adjustments, or may not even be comparable. Plaintiff testified that the Subject was not located in a development, but was unable to speak to whether the comparables were located in a development or whether the comparables were in an ordinary neighborhood.

Even if the lack of information on zoning or neighborhood is ignored, the above analysis shows that comparables 3 to 6 cannot be used due to their differences in lot size and GLA, and the NU code. Adjustments to a comparable could be warranted, or may not be warranted if it was an updated comparable. Here, there is no information as to the age of comparable 2, which may require an adjustment if it is considerably older than the Subject. However, there is no information

in this regard.  This would then leave just one comparable to decide the Subject's vale, which is comparable 1 (sold in February of 2016 for $325,000).  However, unless there is such a paucity of sales, explained satisfactorily to the court, one sale is not reasonable or credible indication of value.  As stated:

> a single sale is not a sufficient sampling to arrive at a firm conclusion.  The inquiry relates to what purchasers of property of this kind will pay and what willing sellers will demand in sales of this type . . . .  Until a sufficient number of samplings have been examined to establish a definite trend from which a reasonable conclusion can be drawn, this answer cannot be given.
>
> [Lorenc v. Township of Bernards, 5 N.J. Tax 39, 49 (Tax 1982)].

Plaintiff's calculation of the Subject's true value (sale price of comparable divided by its GLA), standing alone, oversimplifies the valuation technique and process, and dilutes the need for qualitative cogent evidence.  Presuming that the comparables are all in the same or similar condition as the Subject, (thus, requiring no adjustments to the comparables' sale prices) does not equate to competent or credible evidence.  Amenities present or absent in a comparable may or may not add value to that property.  See U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("[D]ifferences between a comparable . . . and the subject property are anticipated.  They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other.").  See also The Appraisal of Real Estate at 388 ("If all comparable properties are identical to the subject property, no adjustments to sale prices will be required. However, this is rarely the case.").  Adjustments should be made to the "sale prices of comparable properties for differences in location." Id. at 379.  The reason for this adjustment is because two properties with "identical physical characteristics may have quite different market values if one of the properties has less attractive surroundings." Ibid.

In sum, plaintiff's reliance upon the unadjusted sale prices of the comparables, because they are the same or similar to the Subject in terms of bedroom count and proximity to the Subject is not cogent or persuasive evidence of their comparability with the Subject, which would be sufficient to render them credible indicators of the Subject's value. Providing a list of comparable sales with unadjusted sale prices, and asking the court to reduce the assessed value of the Subject somewhere between such sale prices, does not meet a taxpayer's burden of providing "'sufficient competent evidence of true value of the (subject) property.'" See Siegfried O. v. Township of Holmdel, 20 N.J. Tax 8, 20 (Tax 2002).

The court is mindful that it must strive to find value. However, as stated in Township of Warren v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988), "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." (citation and quotation marks omitted). Thus, the court cannot "arbitrarily assign a value to the property not supported in the record." Ibid. (citation and quotation marks omitted). Here, there was no such credible evidence for the court to independently conclude the Subject's value.

## CONCLUSION

For the aforementioned reasons, the court finds that plaintiff has failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.

8