NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
  **JUDGE**

R.J. Hughes Justice Complex
  P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax: (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 26, 2018

**BY FIRST-CLASS MAIL**
Chaim Gulkowitz, Self-Represented
Lakewood, New Jersey

**UPLOADED**
Lani Lombardi, Esq.
Cleary Giacobbe Alfieri Jacobs, L.L.C.
955 State Route 34, Suite 200
Matawan, New Jersey 07747

> Re:    Gulkowitz v. Township of Lakewood
>         Block 11.11, Lot 87 (18 Queens Court)
>         Docket No. 010328- 2017

Dear Mr. Gulkowitz and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter.

Plaintiff owns a residence, the above-captioned property ("Subject"), in defendant ("Township").

For tax year 2017, plaintiff petitioned the Ocean County Board of Taxation ("County Board"),

which reduced the Subject's local property tax assessment from $452,100 to $442,000.[1] Plaintiff

timely appealed the County Board's judgment to this court.

The Subject is a single family residence which plaintiff purchased June 2015 for $390,000.

Plaintiff claimed he paid the asking price since his family wanted his mother-in-law to move to a

---

[1] For tax year 2017, the Township underwent a district-wide revaluation.

*

home that is close to plaintiff's home (plaintiff and his wife own another property in the same neighborhood at 17 Queens Court). The sale was by owner (thus, not listed on the multiple listing services). The Subject is a two-story colonial style residence with three bedrooms and two full bathrooms, an unfinished basement, a one-car garage an in-ground pool, and a porch. Built in early 1990's, it is dated with a gross living area ("GLA") is about 1,900 square feet ("SF"). As of October 1, 2016, it was being rented on a short-term basis (for about $1,800 to $2,000 without utilities) since his mother-in-law has yet to move in.

Plaintiff relied upon four comparables, including the Subject, all of which were in the Township, and two in the same development. His data source was the County Board's website.

| | Address | Built | GLA | Sale Date | Sale Price | Room Count | Other |
|---|---|---|---|---|---|---|---|
| 1 | Subject | 1992 | 1,900 SF | 06/11/15 | $390,000 | 3 beds; 2 baths | Unfin. Basement; In-ground pool; porch; Attached one-car garage |
| 2 | 101 Van Buren | 1978 | 1,920 SF | 09/04/15 | $395,000 | 5 beds; 3 baths | Pool. |
| 3 | 5 Miller Rd | 1973 | 2,100 SF | 07/07/16 | $340,000 | 5 beds; 2 baths | |
| 4 | 36 Leigh Dr | 1966 | 2,104 SF | 05/27/16 | $220,000 | 4 beds; 2 ½ baths | Basement; pool. |

Plaintiff had personally visited Comparable 2, which he conceded was a bi-level, thus, his assumption that it had a basement could be mistaken. While he felt that the lot size was somewhat smaller than the Subject's, he did not know it was about half the size. Comparable 3, he conceded, was on a busy street as compared to the Subject's quiet and residential street. While he stated that from the outside, it looked to be a two-story home similar to the Subject, he stated that he would not be surprised if it were a bi-level, and if so, would not have a basement. He did not know that Comparable 4 was marked as a non-usable ("NU") sale with Code 26. He agreed that there were other sales closer to the assessment date, but felt that the Subject's purchase price along with the

sale price of Comparable 2, which he claimed was the most similar to the Subject in terms of GLA and amenities, should suffice as evidence to reduce the assessment to $390,000.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J.Super. 271, 285-86 (App. Div. 1998).

A taxpayer can rebut the presumption by introducing "cogent evidence" which is evidence that is "'definite, positive and certain in quality and quantity.'" Pantasote, 100 N.J. at 413 (citing Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952)). Plaintiff must present the court with "evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment." MSGW, 18 N.J. Tax at 376. Disagreement with an assessment must be based on "'sound theory and objective data rather than on mere wishful thinking.'" Ibid. (internal quotation marks omitted).

If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

If, at the close of plaintiff's proofs, the court is presented with a motion to dismiss under R. 4:37-2(b), in evaluating whether plaintiff's evidence meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW, 18 N.J. Tax at 376. If the court decides that the plaintiff did not overcome the presumptive correctness, then the assessment should be affirmed. Ibid. Thus, if a party has not met this burden, the trial court need not engage in a further evaluation of the evidence to make an independent determination of value.

The market approach (or using comparable sales) is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

Plaintiff's comparables are problematic as credible indicators of the Subject's value. Two of them were bi-level, thus, not the same style as the Subject. Styles can affect the sales prices, as well as the buyer-pool (thus, the market). Both those comparables did not have a basement. All three comparables were much older compared to the Subject. The lot size of comparable 2, which plaintiff felt was most similar to the Subject, was half that of the Subject. Comparable 3 was on a busy street unlike the Subject. Twwo comparables which plaintiff felt were the best value indicators (the Subject and comparable 1), sold a year to a year and one half before the assessment date. While it is not unreasonable to choose these as indicators of market value due to the

proximity of location and GLA similarity, plaintiff agreed that there were sufficient sales in 2016. Credibility-wise, those sales would be considered first, and if rejected as non-comparable, the earlier year's sales could be then considered. However, without this initial "screening," the court cannot conclude that the 2015 sales are the only ones available, thus, can be considered as credible indicators of the Subject's value, and then would also need to consider whether the prices would require adjustments for market condition, among others.

Finally, comparable 4 was marked with an NU-26 code which applies to sales, which for reasons other than those listed in the regulations, "are not considered to be between a willing, knowledgeable buyer, not compelled to buy, and a willing, knowledgeable seller, not compelled to sell."[2] See N.J.A.C. 18:12-1.1(a)(26). This raises a question whether the sale was an arms-length transaction. If "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care," thus, the "circumstances of the sale must be thoroughly researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable. See The Appraisal of Real Estate, supra, at 410.

Of course, the use of a sale marked with an NU code could be satisfactorily explained. This was not done here. The statute provides:

> In any action or proceeding . . . on review of the assessment for taxes of any real property, or in any action or proceeding in the Tax Court, any person offered as a witness in any such action or proceeding shall be competent to testify as to sales of comparable land, including any improvements thereon, contiguous or adjacent to the land in question, or in the vicinity or locality thereof, or otherwise comparable, from information or knowledge of such sales, obtained from the owner, seller,

---

[2] In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666.

purchaser, lessee or occupant of such comparable land, or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales, which testimony when so offered, shall be competent and admissible evidence in any such action or proceeding.

[N.J.S.A. 2A:83-1 (emphasis added).]

The burden is on the plaintiff to show that the sale he deems comparable is a reliable indicator of the Subject's market value.[3] The court cannot accept a comparable sale without any verification of its bona fides. See Glen Wall Associates v. Township of Wall, 99 N.J. 265, 282 (1985) (the court must "appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value").

For the above reasons, the court finds that it does not have sufficient sampling, thus, there is no credible quantitative and qualitative evidence of the Subject's true value. Plaintiff's calculation of the Subject's true value (sale price of comparable divided by its GLA times the Subject's GLA), standing alone, oversimplifies the valuation technique and process and dilutes the need for qualitative cogent evidence.

The court is mindful that it must strive to find value. However, as stated in Township of Warren v. Suffness, 225 N.J. Super. 399 (App. Div. 1988), "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." Id. at 414 (citation and quotation marks omitted). Thus, the court cannot "arbitrarily assign a value to the property not supported in the record." Ibid. (citation

---

[3] Of course, if plaintiff showed the court with credible evidence that each sale with the NU code was verified as being arms-length despite existence of any factors indicating or implying a non-market sale, the Township cannot simply rest on an opposition that the sale is unreliable because it was treated as non-useable by the assessor in developing the Chapter 123 ratios. See Greenblatt v. City of Englewood, 26 N.J. Tax 41, 54 (Tax 2010) ("Simply saying that a sale was determined by the assessor to be non-useable for purposes of the Director's sales ratio study does not render the sale non-useable for valuation purposes."). But plaintiff must first satisfy this court of the sale's reliability. Here, this was not done.

and quotation marks omitted). Here, there was no such credible evidence for the court to independently conclude the Subject's value.

**CONCLUSION**

For the aforementioned reasons, the court finds that plaintiff has failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.

7