NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
**JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:  (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

April 2, 2018

**(AMENDED OPINION DELETING PARAGRAPH TITLED CONCLUSION ON P.8)**

<u>**UPLOADED AND BY FIRST-CLASS MAIL**</u>
Martin and Kathleen Bjelka, Self-Represented
Belmar Borough, New Jersey

<u>**UPLOADED**</u>
Emil Philibosian, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, L.L.P.,
40 Paterson Street
New Brunswick, New Jersey 08901

> Re:  Martin and Kathleen Bjelka v. Borough of Belmar
> Block 151, Lot 22
> <u>Docket No. 008346-2017</u>

Dear Mrs. Bjelka and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter.

Plaintiffs owns a residence, the above-captioned property ("Subject"), in defendant ("Borough").

For tax year 2017, the Monmouth County Board of Taxation ("County Board") issued a judgment

dated March 31, 2017 affirming the 2017 assessment of $411,700 (allocated $350,000 towards

land value and $61,700 towards improvement value), using judgment code 6B ("hearing waived").

Plaintiffs timely appealed the County Board's judgment to this court.

*

The Subject was built in 1940 and is a single family bungalow. It is situated on a 25x100 lot, which is located in an R-40 zone. It has a total gross living area ("GLA") of about 642 square feet ("SF") with two bedrooms, one full bath, no basement, a porch, a one-car garage, and a shared driveway. The beach is approximately 1½ blocks away. The Subject is used as a summer rental property (thus, was deemed income producing by plaintiff).[1]

Plaintiff (Mrs. Bjelka, a real estate agent, who testified, thus, the remaining opinion will use plaintiff in the singular), used six sales in the Borough, as her comparables, as follows:

| | Address | Built | Lot Size | GLA | Sale Date | Sale Price |
|---|---|---|---|---|---|---|
| 1 | 206 16th Ave | 1940 | 25x100 | 692 SF | 5/26/16 | $320,000 |
| 2 | 212.5 16th Ave | 1940 | 25x100 | 662 SF | 5/26/16 | $320,000 |
| 3 | 1202 Oakwood Rd. (aka 1701 River Rd.) | 1920 | 53x127 | 608 SF | 1/31/17 | $267,920 |
| 4 | 415 14th Ave | 1952 | 40x99 | 1498 SF | 4/22/16 | $415,000 |
| 5 | 219 15th Ave | 1940 | 20x100 | 910 SF | 6/30/17 | $380,000 |
| 6 | 1807 Surf Ave | 1940 | 44x60 | 1138 SF | 12/29/15 | $450,000 |

Plaintiff relied on the County Board's website, which provides a web version of a property record card, along with basic information about the property, such as the year built, lot size, GLA, zone, sales, and assessment history. She also relied on the Multiple Listing Service ("MLS"), which includes information about the property's physical characteristics, tax assessment, and sales history. She had personally inspected Comparables 1 and 2 only, as they were located next to the Subject, and for the same reason placed greatest weight on them. Based on the unadjusted sales prices, she requested the court find the Subject's value to be $320,000.

---

[1] In 2015, the Subject was leased for $17,500, and in 2016 the Subject was leased for $18,500. A copy of the 2016 lease agreement showed a lease term as May 24 to September 6, and included two parking spots "as a privilege" to be used as long as the parked cars would not block anyone.

The Borough did not provide any expert report or testimony, and rested on its assessment after providing rebuttal testimony, by its assessor, as to the credibility of certain comparables provided by plaintiff.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998).

The presumption can be rebutted by introducing "cogent evidence," which is evidence that is "definite, positive, and certain in quality and quantity." Pantasote, 100 N.J. at 413 (citation and internal quotation marks omitted). Disagreement with an assessment must be based on "'sound theory and objective data rather than on mere wishful thinking.'" MSGW, 18 N.J. Tax at 376.

If, at the close of plaintiff's proofs, the court is presented with a motion to dismiss under R. 4:37-2(b), in evaluating whether plaintiff's evidence meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." Ibid. If the court decides that the plaintiff did not overcome the presumptive correctness, then the assessment should be affirmed. Ibid. The court need not engage in a further evaluation of the evidence to make an independent determination of value. If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of

3

Morris Plains, 100 N.J. 418, 430 (1985). The complainant continues to bear the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

Comparable 5, is similar to the Subject in terms of age, lot size, bedroom and bathroom count, proximity to the beach (within 2 blocks), and no basement. Unlike the Subject, the Comparable does not have a garage or shared driveway. The court notes that Comparable 5 was sold eight months after the assessment date of October 1, 2016. However, this does not necessarily require a complete rejection of the sale, rather, "courts typically only allow post-assessment date sales to corroborate an opinion of value based on pre-assessment information." S & R Realty v. Town of Kearny, 20 N.J. Tax 488, 496 (Tax 2001) (citation omitted), aff'd, 21 N.J. Tax 105 (App. Div. 2003). See also Borough of Little Ferry v. Vecchiotti, 7 N.J. Tax 389, 398 (Tax 1985) ("[U]nless a subsequent event is clearly barred by considerations such as remoteness in time or location, or is virtually totally dissimilar to the property in question, the mere fact that it took place subsequent to the assessment date should not bar it from consideration in the valuation process."); Almax Builders, Inc. v. City of Perth Amboy, 1 N.J. Tax 31, 37 (Tax 1980) (as "long as a proffered sale is not remote," it can be considered "for its rational probative valuation inference"). Thus, Comparable 5 will be considered as corroborative of plaintiff's other sales proximate to the assessment date.

Comparable 3 appears to have been a quick sale. It was on the market for only 20 days. The MLS set a deadline for the offers to buy the property as noon of December 5, and noted the property was the "lowest price single family home in Belmar." Although a larger lot, with a basement and views of Shark River, it is in close proximity to Route 35, a four-lane major highway in the Borough. Whereas, the Subject, although located on a smaller lot, is only 1.5 blocks to the

4

beach. Additionally, there was nothing to indicate that the home was being used as a summer rental.[2] The sale was marked as non-usable ("NU") code 26 which applies to sales that for reasons other than those listed in the regulations, "are not considered to be between a willing, knowledgeable buyer, not compelled to buy, and a willing, knowledgeable seller, not compelled to sell."[3] See N.J.A.C. 18:12-1.1(a)(26). A notation on the County Board's website of NU-26 means that the property "sold with approved plans for new home, engineering and architectural." Plaintiff claimed that she called the listing agent who assured her that it was an arms-length sale, the purchasers wanted to be closer to their family (which was not the seller, or related to the seller), and further that while the property was sold to be demolished and rebuilt, the plans were old and not currently useable. However, the assessor rebutted this by testifying that the comparable was approved for demolition, and the building was marketed as a tear-down, which justified the NU-26 code. The court finds that the comparable's quick sale and locational proximity to a busy highway, as balanced with the testimony of it being sold as a teardown (which could cast the transaction as more of a land sale as opposed to sale of an improved property), and plaintiff's lack of knowledge of how "old" the plans were, provides sufficient reason to deem it as an unreliable indicator of the Subject's true value.

---

[2] The MLS noted that this property was not owner occupied. It is unclear why this was so. Although the prior sale of the property showed the buyers as Salvatore and Jean Pensavalle, the seller on the January 31, 2017 transaction was only Jeanne Pensavalle.

[3] In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666 (citations omitted).

Comparables 4 and 6 are single-family homes, close to the beach (the former 3.5 blocks from the beach and the latter one block away). These sales, per plaintiff, exemplify the quantity and quality of property one would expect to get when paying over $400,000, namely, twice the lot size and twice the GLA, with renovated homes and bigger driveways and/or garages. The court will place no weight to these comparables, given the large disparity in the GLA for which adjustments are required, and further because Comparable 6 sold ten months before the assessment date (the court having other comparables closer to the assessment date for analysis).

This leaves Comparables 1 and 2. They were each listed as a two-family home on the MLS, and were both sold by the same one owner to one buyer. Both homes are divided into two units (termed "cottages"). The MLS described them as "affordable summer cottages," to "enjoy" the summer, 1½ blocks from the beach, with the ability to rent the front cottage and/or the rear cottage during the summer, and that both units in Comparable 2 were rented for the summer of 2015. The sales were marked with NU-30 code, which applies to sales where "multiple parcels are conveyed collectively as one transaction with an arbitrary allocation of the sale price of each parcel." N.J.A.C. 18:12-1.1(a)(30). Plaintiff challenged the NU-code on grounds that each property was individually marketed (each had a separate MLS listing number; each was on the market since March 2015 (first listing), and for 190 days and 184 days, respectively, from their renewed listing in September of 2015 to the date of sale; each sale was recorded separately in Book 9170, page 2603 and page 2757, respectively), and sold within 94.4% of their respective asking prices (both were listed at $339,000 from the first listing onwards, and both sold for $320,000), thus, there was "no package deal."

The court was not provided a sale deed (or a HUD settlement statement) of either property. However, the fact that the comparables are very similar as to physical characteristics, age, size,

6

proximity to the beach, location, and their use as summer rentable "cottages," combined with the lack of any information from the Township as to its independent investigation as to why or how there was an arbitrary allocation, and how such allocation did not reflect the comparable's true value, does not require a rejection of these sales due to the NU-30 code.

The Borough's assessor maintained that Comparables 1 and 2 are not credible indicators of the Subject's value because they are two-family units (unlike the Subject, which is a single family home), and are generally marketed differently, attract a buyer pool different from that for single-family homes, and have different financing terms, standards, or requirements. The Borough also argued that the lack of knowledge of the "elements of sale" (whether there were existing leases at the time of sale, and if so, whether they were assigned with the sale, and the "creds" of the parties to the sale), as well as a lack of a significant adjustment for their status as multi-family homes, makes these comparables questionable. Plaintiff countered that since both comparables were used as summer rentals (thus, short term), just as the Subject, all three properties would attract the same buyers (investors in income producing properties), thus, the two-unit versus single family is a distinction without a difference.

The court finds plaintiff's argument more persuasive. This is especially true considering the fact that both properties were advertised for sale as summer cottages, either for ownership or to use as summer rentals. Additionally, each comparable, despite the two-unit feature, is almost identical to the Subject in terms of lot size, GLA, number of bathrooms, age, zone, shared driveways, lack of basement, and proximity to the beach. Other than alluding to a different financing aspect, the court was not educated by the Township as to what this difference was, and why this would impact the buyer pool, types of buyers, and property use. Moreover, as summer rentals, the properties would have short term leases, as evidenced by the MLS data as to

7

Comparable 2, as well as the Subject's lease for 2016. As such, assumption of such leases, if any, would not necessarily require a conclusion that the sale prices would be lowered to account for the assumption of the existing leases.

The court therefore finds that the sale prices of Comparables 1 and 2 are credible indicators of the Subject's value. Due to the almost identical features listed in the preceding paragraphs, adjustments would not be a necessary requirement. Therefore, the Subject's value for 2016 is $320,000. Comparable 5 corroborates this value conclusion. As noted above, it is similar to the Subject in almost all aspects, except for its larger GLA. Thus, even if the court were to consider this Comparable more similar to the Subject than the two-unit Comparables 1 and 2, its sale price of $380,000 would be reflective of its larger GLA, and corroborate a value conclusion for the Subject at $320,000.

For all of these reasons, the court reduces the assessment of the Subject to $320,000. Tax year 2017 being a revaluation year, no further adjustment is required vis-à-vis the average ratio. The Borough is directed to provide an allocation of the $320,000 true value found by this court within 10 business days of the receipt of this Opinion, after which the court will direct the Tax Court Clerk to enter a judgment in accordance therewith. See R. 8:9-3; 9-4.

Very truly yours,

Mala Sundar, J.T.C.

8