**NOT FOR PUBLICATION WITHOUT APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



MALA SUNDAR
JUDGE

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

November 13, 2020

Ptak, Peter and Tanya
Plaintiffs, Self-Represented

Daniel O'Hern, Esq.
Byrnes O'Hern & Heugle L.L.C.
Attorney for Defendant

Re: Ptak et al. v. Borough of Red Bank
<u>Docket No. 006733- 2020</u>

Dear Plaintiffs and Counsel:

This is the court's decision following trial of the above-captioned matter. The court, for reasons stated below, affirms the judgment of the Monmouth County Board of Taxation (County Board), which had upheld the 2020 local property tax assessment of $264,500[1] on the plaintiffs' home, identified as Block 84, Lot 140 (Subject), located in defendant taxing district (Borough).

The Subject is a lot measuring 0.17 acres (or 50' x 150'). It is improved by a 1½ story, Cape Cod styled residence, built in 1954 with 1,372 square feet (SF) of gross living area (GLA). It has three bedrooms, two full baths, an unfinished basement, a concrete patio, and a shed. There is a driveway but no garage. There are two smaller dormers facing the house front, and one larger one in the rear. The roof of the house and the shed have solar panels on them. The Subject is located towards the end of its dead-end street. Its rear backs to property of the Borough's Department of Public Works which is used for recycling. The assessor's inspection about a year ago showed the bathrooms to have been updated, and the exterior and interior well-maintained.

---

[1] The assessment was allocated $98,500 to land and $166,000 to improvements.


Interpreter


ADA
Americans with
Disabilities Act

ENSURING
AN OPEN DOOR TO
JUSTICE



Plaintiff, Mr. Ptak (who appeared and testified), relied upon the unadjusted sale prices of the following five homes in the Borough, which information be obtained from the County Board's website:

| Address | Sale Date | Sale Price | Features |
|---|---|---|---|
| 81 W. Westside | 06/21/18 | $250,000 | 2-story colonial; 75'x100' lot; 1240 SF GLA |
| 92 W. Westside | 09/26/19 | $175,000 | 2-story colonial; 50'x150' lot; 1116 SF GLA |
| 45 Leighton Ave | 08/01/19 | $226,000 | 2-story colonial; 37'x120' lot; 1288 SF GLA |
| 9 Locust Ave | 09/19/18 | $244,000 | 2-story colonial; 30'x117' lot; 1840 SF GLA |
| 45 Linden Pl | 08/29/19 | $225,000 | 2-story multi-family; 50'x150' lot; 1860 SF GLA. Located in heart of downtown; industrial sized shed; concrete driveway all way to back; parking in rear |

Mr. Ptak noted that all comparables are 2-story colonials with an attic, thus, larger than their 1½-story Cape Code home with small dormers, and even with larger GLAs or lot sizes, sold for amounts lesser than the Subject's assessment. He asked the court to find the Subject's value at $250,000 or at most $253,000 based on the average sale prices of their comparables.

He also pointed out that a property on the same street as the Subject, 94 West Westside Avenue is assessed at $238,100 for tax year 2020 although it has a larger lot (75' x 150'). Additionally, he noted, while the assessments increased from tax year 2019 for certain homes on proximate to the Subject by $2,000 to $4,000, they were lower than the Subject's increased assessment of $5,000.[2]

---

[2] Those increases were as follows: (1) 117 Westside Ave: $3,000; (2) 120 Westside Ave: $4,000; (3) 121 Westside Ave: $4,000; (4) 124 Westside Ave: $3,000; (5) 125 Westside Ave: $2,000; and (6) 127 Westside Ave: $4,000. Mr. Ptak noted that the assessment of another property, 128 Westside Avenue (the Subject's neighbor) also increased by $5000.

The Borough's assessor (a licensed appraiser and a realtor) testified that the Subject's larger dormer in the rear renders the Subject comparable, and not inferior to, 2-story colonial styled homes. He also noted that the Subject had a sizeable if unfinished basement, and a sizeable outdoor shed with solar panels on the roof. He also stated that an inspection by his office a year ago showed that the bathrooms in the Subject were modernized, and that the Subject's interior and exterior were well-maintained.

The assessor also testified he had determined four of the five sales as non-useable (NU), and that most comparables were in an inferior condition as compared to the Subject.

**FINDINGS**

Initially, the court notes that comparison of assessments is generally disallowed since those assessments can be incorrect or those properties under-assessed. See Rothman v. City of Hackensack, 1 N.J. Tax 438, 441 (Tax 1980), aff'd sub nom, 4 N.J. Tax 529 (App. Div. 1981); Greenwald v. Borough of Metuchen, 1 N.J. Tax 228, 236 (Tax 1980) ("[P]roof of comparative assessments is inadequate to sustain a claim of discrimination."). Thus, Mr. Ptak's proffer of assessments of neighboring properties, which he agreed cannot be used to find the Subject's value, is of no assistance to the court.

Second, four of the five sales are of questionable reliance because they were deemed NU by the assessor.[3] The sale of 9 Locust Avenue was marked NU12 ("Sheriff's sales"). Generally,

---

[3] In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666.

such sales are distress or involuntary sales since the property was acquired due to the owner's default of a debt owed for which the property is the collateral (e.g., foreclosure or tax sale certificates). As such, there is no "willing" seller.

The sale of 81 W. Westside was marked NU10 ("Sales by guardians, trustees, executors and administrators." See N.J.A.C. 18:12-1.1(a)(10)), because it was sold by the executrix of an estate. Further, the sale included an additional vacant lot, 2.01, a fact which was unrefuted by plaintiffs. The assessor noted that after its purchase, the buyer flipped the properties for $550,000 in February of 2020, and the current owner, a builder, is constructing the new homes therein, and that such flips (and non-market exposed sales) are common in the Borough. He also testified that the house on the one lot did not have air-conditioning, and per its property record card, with bath and kitchen in an "old" condition for which a 10% functional obsolescence was provided.

The sales of 92 W. Westside, and 45 Linden Place were marked NU26 ("Sales which for some reason . . . are not deemed to be a transaction between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell."). The assessor credibly testified that these sales were so marked because they were not exposed to the market, that he verified this information from review of the sale deeds, property sales listing data before he designated those sales with an NU26 on the SR-1A forms (a form he must fill out, as part of his responsibilities after he receives sale deeds for any and all sales in the Borough, to record whether in his opinion the sale is usable or NU), and the non-exposure was why their sale prices did not represent their fair market value.

Although sales marked NU10 or NU26 can nonetheless be used as evidence of value in a local property tax appeal, see Greenblatt v. City of Englewood, 26 N.J. Tax 41, 54 (Tax 2010) ("Simply saying that a sale was determined by the assessor to be non-useable for purposes of the

4

. . . sales ratio study does not render the sale non-useable for valuation purposes."); N.J.A.C. 18:12-1.1(b) (sales under category 10 or 26 "may be used" if investigation shows that the sale was "between a willing buyer . . .and a willing seller" with parties acting "knowledgeably and for their own self-interest"), here Mr. Ptak was unaware of the NU codes, and did not investigate or verify the bona fides of any sale. He noted that he relied on the sale information available on the County Board's website, which apparently automatically populates a petition with sales within the assessment date, and he chose sales which he felt were comparable based on their location (in the Subject's neighborhood), lot size and GLA. However, those sales still require to be investigated by a party intending to rely on them. That the County Board's website lists those sales does not equate to proof that these sales were at arms-length and their sale prices represent their fair market value, and their average represents the Subject's value.

Without verification of its bona fides, the court cannot simply accept a sale price as a credible indicator of the Subject's value. See Glen Wall Assoc. v. Township of Wall, 99 N.J. 265, 282 (1985) (courts must "appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value. . ."). See also Appraisal Institute, The Appraisal of Real Estate 410 (14th ed. 2013) (if "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care," thus, the "circumstances of the sale must be thoroughly researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable).[4]

This leaves one sale, 45 Leighton Avenue. Although its 1288 SF of GLA is slightly smaller than the Subject's 1372 SF of GLA, the lot size is larger (0.10 acres compared to 0.172

---

[4] The responsibility to verify the conditions or circumstances of a sale is not just upon plaintiffs but upon any party (including such party's expert if any) proffering a sale as evidence of value. See VBV Realty, L.L.C. v. Township of Scotch Plains, 29 N.J. Tax 548, 564 (Tax 2017).

acres). There was no explanation why this size differential was irrelevant. The assessor testified that the reduction in sale price (listed 10/24/18 for $284,900, reduced on 12/4/18 to $269,000, and finally sold for $226,000 08/01/2019) evidenced the credibility of the listing's description of the comparable's condition as needing some "TLC," but conceded that he did not personally inspect the property. Mr. Ptak contended that the sale price reduction was because it was initially listed at too high a price, however, this was simply his lay opinion. In any event, the court cannot conclude a value based on one sale unless there is evidence that there were no sales during and up to the assessment date. See Briskin v. City of Atlantic City, 6 N.J. Tax 187, 190 (Tax 1983) ("One sale does not necessarily make a market [and, thus] is not controlling on the issue of value."); Lorenc v. Township of Bernards, 5 N.J. Tax 39, 49 (Tax 1982) ("a single sale is not a sufficient sampling to arrive at a firm conclusion" since it does not help establish "a definite trend from which a reasonable conclusion can be drawn").

Finally, and as the assessor pointed out, Sale 2 (92 W. Westside) was inferior to the Subject lacking air conditioning and having a smaller GLA, which even if by 256 SF, was significant due to the nature of the homes in the Subject's neighborhood, thus an outlier. Adjustments should be made for differences in physical characteristics, without which they are not deemed reasonably comparable. Here, plaintiffs did not attempt to reconcile the sale price and the GLA differential.

Additionally, the assessor pointed out that Sale 5 (45 Linden Place) was a two-family home, thus, cannot be considered a reasonable comparable to the Subject. The court agrees. There was no proof that the two-family home would require the same minimum lot size or other zoning requirements as the Subject or that the buy-sell market for a two-family home is substantially similar and competitive to that of a single family home such as the Subject.

6

"While there is no requirement that a taxpayer use expert testimony to support his or her claim of value, the taxpayer is not relieved of the obligation to provide the Tax Court with competent and sufficient evidence of such value." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 374 (App. Div. 2001) (citation omitted). Here, the court finds that the unadjusted sale prices of five comparables, four of which were deemed by the assessor as not representative of a market sale and as to which plaintiffs did not prove otherwise, do not provide persuasive evidence of the Subject's value. The court is mindful that it must strive to find value. However, its "right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." Township of Warren v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988). Thus, the court cannot "arbitrarily assign a value to the property not supported in the record." Ibid. Here, there was no such credible evidence for the court to independently conclude the Subject's value.

**CONCLUSION**

For the above reasons, the court finds that plaintiffs have failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Hon. Mala Sundar, J.T.C.